**REVERE CAMERA COMPANY, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**No. 13561.**

United States Court of Appeals Seventh Circuit.

June 12, 1962.

David H. Mendelsohn, Thomas J. Finnegan, Chicago, Ill., Sidney R. Korshak, Chicago, Ill., for petitioner.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Glen M. Bendixsen, Stuart Rothman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Melvin J. Welles, for National Labor Relations Board.

Before HASTINGS, Chief Judge, and CASTLE and SWYGERT, Circuit Judges.

CASTLE, Circuit Judge.

This case is before the Court pursuant to Section 10(e) and (f) of the National Labor Relations Act,[1] as amended, (29 U.S.C.A. § 160(e) and (f)) on the petition of Revere Camera Company to review and set aside an order of the National Labor Relations Board issued against it, and the Board's request for enforcement of that order. The Board's decision and order are reported at 133 NLRB No. 159.

1. All references herein to the "Act" are to the National Labor Relations Act, as amended. 29 U.S.C.A. § 151 et seq.

The Board found that petitioner violated Section 8(a) (1) of the Act[2] by promulgating a no-union solicitation rule to impede the Union's[3] campaign, by discriminatorily applying that rule, by interrogating an employee about her union activity, and by promising benefits to induce employees to vote against the Union; and that petitioner violated Section 8(a) (3) and (1)[4] of the Act by discharging four employees because of their union membership and activity.

The Board's order requires the petitioner to cease discouraging union membership by discriminatorily selecting employees for layoff, discriminatorily promulgating or applying any no-union solicitation rule for the purpose of impeding union organization, promising wage increases or other economic benefits to induce employees to reject the union as their representative, coercively interrogating employees concerning union activities, and in any other manner interfering with employee rights guaranteed under the Act. Affirmatively, the order requires petitioner to offer reinstatement to the four employees by, in the light of the economic justification for layoffs at the time of their discharges, recognizing their continued employment rights under petitioner's established seniority policy; and if work is not available for them pursuant to those rights to place them on a preferential hiring list; to make them whole for any loss of pay suffered; and requires petitioner to post appropriate notices.[5]

The contested issues are whether there is substantial evidence, on the record considered as a whole, to support the Board's factual findings that:

(1) Petitioner's no-union solicitation rule was promulgated for discriminatory reasons and applied in a discriminatory manner.

(2) Petitioner discharged employees Liberti, Donlan, Schaffer and Stamper because of their union membership and activity.

(3) Petitioner promised a wage increase shortly before the representation election to affect the results thereof. and its conclusion that:

(4) Petitioner's interrogation of employee Moore and threat to discharge her was, under the circumstances, a coercion of her in the exercise of a right guaranteed by the Act.

 Our review in so far as factual findings of the Board are concerned is limited to a determination of whether or not those findings are supported by substantial evidence on the record considered as a whole. Board findings so supported are conclusive. Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 487–488, 71 S.Ct. 456, 95 L.Ed. 456; N. L. R. B. v. Kiekhaefer Corporation, 7 Cir., 292 F.2d 130, 132. And, conclusions which are reasonable inferences of fact may not be set aside upon judicial review because the courts would have drawn different inferences. N. L. R. B. v. Southern Bell Telephone & Telegraph Co., 319 U.S. 50, 60, 63 S.Ct. 905, 87 L.Ed. 1250; N. L. R. B. v. Walton Mfg. Co., 82 S.Ct. 853.

 Except for inferences drawn from facts the Board's findings for the most part are the result of the trier of the facts' resolutions of conflicting testimony on the basis of expressed determinations made as to credibility and from our examination of the record we cannot say the findings lack substantial support in testimony to which credence was given and from facts from which reasonable inferences were drawn. And, the Board is entitled to consideration of its findings, not as isolated and unrelated units, but as facets of the setting in which the acts upon which they were

---

2. 29 U.S.C.A. § 158(a) (1).

3. Local Union No. 743, affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America.

4. 29 U.S.C.A. § 158(a) (3) and (1).

5. The order directs also that a new election be held, the Union having lost the election which followed the acts of which complaint is made.

based occurred. Butcher Boy Refrigerator Door Company v. N. L. R. B., 7 Cir., 290 F.2d 22.

■■ An employer may have and enforce a plant rule prohibiting union solicitation by employees during working hours. Republic Aviation Corp. v. N. L. R. B., 324 U.S. 793, 65 S.Ct. 982, 89 L.Ed. 557, And, as was noted in that case (p. 803, n. 10, 65 S.Ct. 982) such a rule must be presumed valid in the absence of evidence that it was adopted for a discriminatory purpose. But where such a rule is motivated by the employer's desire to interfere with employees' exercise of their rights under the Act—intended to impede the Union and not for a proper purpose—it is subject to a Board cease and desist order. Time-O-Matic, Inc. v. N. L. R. B., 7 Cir., 264 F.2d 96. Moreover, where an employer discriminates in the enforcement of a no solicitation rule in favor of anti-union solicitation by employees the employer's act is an unfair labor practice. The basis for the rule is an employer's rightful concern over production and discipline—not a right in the employer to aid the objective of those employees opposing union representation.

The rule here involved was adopted a few days after the Union began its representation election campaign and was aimed solely at union activity. There was evidence that it was communicated to the individual employees through their foreman instead of by posting on the bulletin board as was customary and that it was immediately enforced in so far as pro-union activities were concerned. Employees wearing union "campaign jackets" were restricted in their movement about the plant and union adherents were warned of the consequences of violating the new rule—threatened with discharge. In contrast, petitioner did not invoke the new rule to interfere with the activity of those of its employees who were soliciting against the Union. And, a previous rule forbidding solicitation of employees, but not addressed to union solicitation or activity, had been the subject of breaches with petitioner's knowledge if not condonation.

Shortly after the no-union solicitation rule was issued petitioner's general manager addressed the assembled employees, reviewed employment benefits the employees had received without a union, and stated that "We don't want a union —we don't think a union is needed"; accused the Union of offering "exaggerated, irresponsible, and meaningless campaign promises, in short any form of propaganda to turn you against your company"; and concluded with the admonition to "continue to work together as a team, without interference by outsiders who now want to divide us by sowing seeds of discontent, unrest, suspicion and dissatisfaction."

The petitioner was within its rights in making its position and sentiment known to its employees but its expressed attitude is one of the factors which must serve to measure its motivation in promulgating the rule, selecting the four employees ordered reinstated for discharge or layoff, and in promising a wage increase. Its action in applying the rule is another.

It was in this setting that employee Cora Moore was summoned to the office of the personnel manager and questioned, in the presence of petitioner's general manager, concerning her alleged solicitation for the Union during working hours. She was warned that if she were caught passing Union literature or saying anything about the Union during working hours, she would be "let go", as that was the rule. Under the circumstances this admonition and threat constituted an unfair labor practice—a coercion of the employee for pro-union activity which although subject to proscription under a properly motivated and impartially enforced rule was here sought to be imposed under a rule which the Board on this record was justified in finding was engendered by the anti-union position and sentiment of the petitioner and applied in a discriminatory manner to favor the anti-union activities of other employees.

Immediately following the address of the general manager to the assembled employees on October 21, 1960, employees Liberti, Donlan, Schaffer and Stamper were informed that they were laid off. All four were adherents of the Union and had engaged in soliciting support for the Union—handing out Union authorization cards. Economic necessity for the layoff of employees existed and the Board so found. From the preceding March 1st to March 1, 1961 the petitioner's work force was reduced from 1,400 to 1,500 employees to about 900 because of a recession in petitioner's business. In June 1960 there were 7 layoffs; 103 in July; 14 in August. The Union's organizing activities began in September. There were 28 layoffs in October and 111 in November. The representation election was held November 10, 1960. But the record discloses that in the selection of Liberti, Donlan, Schaffer and Stamper for layoff the petitioner departed from its standard policy of making layoffs on the basis of seniority. The evidence concerning the layoffs of these four employees supports the Board's finding and conclusion that Union membership and activity rather than other factors dictated their selection.

Our holding in N. L. R. B. v. John S. Swift Company, Inc., 7 Cir., 277 F.2d 641, 645-646 and N. L. R. B. v. Kaye, 7 Cir., 272 F.2d 112, 114 that a discriminatory and therefore unlawful motive for a discharge will not be inferred when a non-discriminatory and therefore lawful reason exists is without application here. The fact that petitioner's policy of making layoffs on the basis of seniority status was wholly disregarded in the cases of these four employees permits of the inference that an existing lawful reason—economic necessity for layoffs—did not cause their selection but that union adherence and activity did.

There was evidence that approximately 10 days before the representation election one of petitioner's department heads informed the employees in his department that they were to receive a raise within two weeks. Such raise did not materialize but the record supports the Board's finding that it was promised. Petitioner's contention that the statements relied upon concerned a previous adjustment in hourly rates made when the work-week was reduced from six to five days is not borne out by the record. Petitioner admits in its brief that the "record clearly shows that long before the [Union's] organizational campaign began, petitioner reduced its work-week from 6 to 5 days and gave all employees wage increases to compensate them for hourly pay lost because of such reduction". But the conversations testified to occurred shortly before the election and related to a future increase. The timing and circumstances of the promise warrant the inference drawn by the Board that it was intended to influence the employees to reject the Union.

The order of the Board is affirmed and the Board's request for a decree enforcing its order is granted.

Affirmed and enforcement ordered.