**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**FLORIDA CITRUS CANNERS COOPERATIVE, Respondent.**

No. 18186.

United States Court of Appeals
Fifth Circuit.

Jan. 3, 1963.

Stuart Rothman, Gen. Counsel, Norton J. Cone, Marcel Mallet-Prevost, Asst.

Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Mary Louise Griffin, Lee M. Modjeska, Attys., N.L.R.B., Washington, D. C., for petitioner.

O. R. T. Bowden, Hamilton & Bowden, Jacksonville, Fla., for respondent.

Before TUTTLE, Chief Judge, WISDOM, Circuit Judge, and JOHNSON, District Judge.

TUTTLE, Chief Judge.

This case is before us on remand from the Supreme Court. It was previously considered by us and enforcement of the Board's Orders was denied by an opinion published at 288 F.2d 630. The Supreme Court granted certiorari, 368 U.S. 812, 82 S.Ct. 31, 7 L.Ed.2d 21, "because there was a seeming non-compliance by [this] court with our admonitions in Universal Camera Corporation vs. [National] Labor [Relations] Board, 340 U.S. 474 [71 S.Ct. 456, 95 L.Ed. 456]." This case was considered by the Supreme Court in a joint hearing and dealt with it in a joint Per Curiam opinion with National Labor Relations Board v. Walton Manufacturing Company, which had been decided by this Court in 286 F.2d 16.

The real question dealt with by the Supreme Court was whether this Court, having on several occasions in the past followed a different test of substantiality of evidence in reinstatement cases as distinguished from other cases, (See N. L. R. B. v. Tex-O-Kan Flour Mills Company, 5th Cir., 122 F.2d 433, N. L. R. B. v. Williamson-Dickie Manufacturing Company, 5th Cir., 130 F.2d 260, N. L. R. B. v. Alco Feed Mills, 5th Cir., 133 F.2d 419, N. L. R. B. v. Ingram, 5th Cir., 273 F.2d 670, N. L. R. B. v. Allure Shoe Corporation, 5th Cir., 277 F.2d 231, Frosty Morn Meats, Inc. v. N. L. R. B., 5th Cir., 296 F.2d 617, and the line of cases beginning with N. L. R. B. v. Houston Chronicle Publishing Company, 5th Cir., 211 F.2d 848, and followed with modifications through N. L. R. B. v. Fox Manufacturing Company, 5th Cir., 238 F.2d 211 and N. L. R. B. v. West Point Manufacturing Company, 5th Cir., 245 F.2d 783), improperly applied the stricter test in this case although no reference was made to the Tex-O-Kan test in the opinion of this Court.

The facts that serve as the background of the controversy are fully stated in this Court's prior opinion, 288 F.2d 631, 635. They need not be repeated here other than to highlight two points. The first is that while collective bargaining was apparently satisfactorily progressing in December, 1957, a severe freeze occurred in the Florida Citrus belt. Following the freeze, negotiations were broken off on December 18th. The second is that on Christmas day of 1957, there was a conversation between the respondent's production manager, Stephenson, and one J. E. Holly, who was then acting as a watchman. It is clear from the record, and from what was said in the prior opinion of this Court as well as the short opinion of the Supreme Court, that if Holly's testimony as to this conversation is to be credited, as it was by the Examiner and the Labor Board, then the Board was fully warranted in determining that the strike that thereafter ensued was an unfair labor strike and that the striking employees, who thereafter sought reemployment, were entitled to be reinstated. This results from the fact that Holly's testimony as to the conversation was to the effect that Stephenson stated that the company did not intend to enter into a contract as a result of the bargaining and that it wished Holly to initiate a move to decertify the Union for which purpose Stephenson offered to furnish assistance of counsel.

In our prior opinion this Court pointed out that "To a considerable extent the findings of the Examiner and the Board are dependent upon the acceptance of the testimony of Messrs. Wingate and Holly rather than the contradictory testimony of witnesses for the respondent. The Examiner believed Holly and where sharp conflicts appeared on crucial facts, he believed Wingate. On such issues the Examiner disbelieved the witnesses for the respondent."

This Court then explained our rejection of the Examiner's and Board's credibility findings as to Holly and Wingate by analyzing the Examiner's expressed attitude towards the theory of credibility as expressed by him in relation to a former Union negotiator who was not called on to testify. The Union's amended charge and the General Counsel's complaint asserted that the respondent had refused to bargain on and after July 14, 1957. For a part of this period one John Roberts had been the Union's chief negotiator, but he had in the meantime accepted employment with the management of another citrus processing company. In connection with this circumstance, the Examiner's report says:

> " 'Because of a circumstance which was unfortunate to his case, the General Counsel was unable to present any evidence of value supporting his position concerning the April through August negotiations. That circumstance was the fact that Roberts left the Union and went with the management of Minute Maid around the first of September. That alliance with the "opposition" not only placed Roberts in such a position which the General Counsel apparently felt would jeopardize any reliance upon him as a witness, but it developed that Roberts' relations with his former associates were such that they made no attempt after his defection to review with him either the course of his negotiations or the result which he had obtained to date.' "

It was the view of this Court as expressed in the opinion heretofore published, that the Examiner here expressed a theory of credibility that was so far foreign to that which he should have applied that "[s]ound reason, in this case, requires us to decline to go with the Examiner in crediting Holly and discrediting Stephenson."

A brief examination of this quoted statement makes plain the basis of our conclusion. The Examiner seemed to feel that it was either incumbent on him, or at least appropriate for him, to rationalize the failure of General Counsel to produce Roberts to testify concerning the charge that there had been no good faith bargaining while he was the Union's chief negotiator. He rationalized it by apparently assuming the validity of a feeling that he attributed to the General Counsel.[1]

■ This Court was previously, and we are now, critical of the attitude of an Examiner who, in a printed report, expresses so cynical a view of the sanctity of the oath in this type of proceeding, which is nearly always marked by direct conflicts in critical testimony. In such a situation there is especial need for impressing witnesses with not only the sanctity of, but also the sanctions against the misuse of, the oath in the giving of testimony. It appears to us that this passage from the Examiner's report amounts to an observation that, regardless of the truth and regardless of the sanctions of the oath, a witness can be expected only to testify in favor of his own interests. Credibility findings of one entertaining such an attitude are not entitled to much weight.

■ There is no lingering doubt in the minds of any of the members of this Court that "[t]here is no place in the statutory scheme for one test of substantiality of evidence in reinstatement

---

1. It is noted that the General Counsel is not quoted as having said that his reliance upon Roberts would be jeopardized by Roberts having gone to work for another company. It is only the Examiner who says, "apparently" the General Counsel felt that such reliance by him would be jeopardized.

Furthermore, the Examiner characterized the mere fact that Roberts had accepted a position with management of another company as a "defection" which has the clear and plain connotation of an abandonment of loyalty or obligation to his former associates and which the Examiner clearly implies would cause him to ignore his plain duty to testify truthfully if called regardless of his present employment.

cases and another test in other cases." 369 U.S. 404, 407, 82 S.Ct. 853, 855, 7 L.Ed.2d 829. We are equally certain that neither in our prior opinion nor in the one now under consideration has this Court applied any standard other than that announced in the Universal Camera Corporation case and reiterated by the Supreme Court in National Labor Relations Board v. Walton Manufacturing Company, and National Labor Relations Board v. Florida Citrus Canners Cooperative, 369 U.S. 404, 82 S.Ct. 853, 7 L. Ed.2d 829. As we previously stated, "We think we are required to test the Examiner's credibility findings in the light of his theory of credibility as he has declared it." We concluded previously, and now adhere to the conclusion, that his expressed theory of credibility is not acceptable. We still conclude that "sound reason, in this case, requires us to decline to go along with the Examiner in crediting these two General Counsel's witnesses and discrediting Stephenson."

 The test of the substantiality of evidence in this case is not in an ordinary Section 8(a) (3) discriminatory firing case. The test here is in connection with the ascertainment whether the respondent bargained in good faith. This Court has never in the past applied the Tex-O-Kan doctrine to such an inquiry. In such a situation we have heretofore uniformly applied the standard of review set forth in Universal Camera Corporation and as restated by the Supreme Court in its opinion disposing of this and the Walton Manufacturing Company cases. This last pronouncement by the Court on this matter is "We there [In Universal Camera Corporation] said that while the 'reviewing court is not barred from setting aside a Board decision when it cannot conscientiously find that the evidence supporting that decision is substantial, when viewed in the light that the record in its entirety furnishes, in-

cluding the body of evidence opposed to the Board's view' it may not 'displace the Board's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.'"

We conclude that the circumstance of the severe freeze having occurred just four or five days before the breaking off of negotiations[2] and our rejection of the credibility findings by the Examiner and the Board prevent us from accepting the Board's finding that this was an unfair labor strike.

The Petition for Enforcement will be Denied.

2. The Board has held in Adams Packing Association, Inc., 44 LLRM 1571, and this Court has held in N. L. R. B. v. Minute Maid Corporation, 5th Cir., 283 F.2d 705, that these same freezes justified the insistence by Florida citrus processors upon a postponement of bargaining on economic issues until the effect of the freezes could be appraised.