NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

WALTON MANUFACTURING COMPA-
NY and Loganville Pants Com-
pany, Respondents.

No. 18198.

United States Court of Appeals
Fifth Circuit.

Sept. 5, 1963.

Rehearing Denied Oct. 9, 1963.

See also 286 F.2d 26.

Marcel Mallet-Prevost, Asst. Gen. Counsel, N.L.R.B., Dominick L. Manoli, Associate Gen. Counsel, N.L.R.B., Norton J. Come, Asst. Gen. Counsel, N.L.R.B., Washington, D. C., for petitioner.

Robert T. Thompson, Alexander E. Wilson, Jr., Atlanta, Ga., for respondents.

Before TUTTLE, Chief Judge, WISDOM, Circuit Judge, and JOHNSON, District Judge.

WISDOM, Circuit Judge.

This case is before us on remand from the Supreme Court. N. L. R. B. v. Walton Manufacturing Co., 1962, 369 U.S. 404, 409, 82 S.Ct. 853, 856, 7 L.Ed.2d 829. In our first decision, 5 Cir., 286 F.2d 16, we sustained the findings of the Trial Examiner and of the National Labor Relations Board that Walton violated Section 8(a) (1) of the Labor-Management Relations Act, 29 U.S.C.A. § 158(a) (1). Accordingly, we granted enforcement of the Board's order that the respondents cease and desist from surveillance of Union activities, interrogations of employees regarding the Union, and threats of reprisal for Union activities. We concluded, however, that considering the record as a whole substantial evidence was lacking to support the Trial Examiner's and the Board's findings that Walton violated Sections 8(a) (3) and 8(a) (1) by discriminatorily discharging four employees and laying off nine others because of their Union membership or Union activities. The Supreme Court granted certiorari in this case and in N. L. R. B. v. Florida Citrus Canners Cooperative, 5 Cir., 288 F.2d 630, because of our "seeming noncompliance with [the Court's] admonitions in Universal Cam-

era Corp. v. Labor Board." 369 U.S. at 405, 82 S.Ct. at 853.

## I.

In Universal Camera, 1951, 340 U.S. 474, 488, 71 S.Ct. 456, 95 L.Ed. 456, the Supreme Court admonished the reviewing court that while the

"reviewing court is not barred from setting aside a Board decision when it cannot conscientiously find that the evidence supporting that decision is substantial, when viewed in the light that the record in its entirety furnishes, including the body of evidence opposed to the Board's view."

it may not

"displace the Board's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it *de novo*."

The Supreme Court's concern over the Fifth Circuit's "seeming noncompliance" with the Universal Camera admonitions is a result of a special rule announced in N. L. R. B. v. Tex-O-Kan Flour Mills Co., 5 Cir., 1941, 122 F.2d 433, 438. The reprobated Tex-O-Kan decision grappled with the difficult problem of reviewing findings of discriminatory motivation in labor discharge cases when the employer's evidence is uncontradicted or when there are inconsistent fair inferences. This is a recurrent situation in rein-

statement cases alleging Section 8(a) (3) violations. As Judge Sibley for the Court saw it in Tex-O-Kan, over twenty years ago, "a cease and desist order * * costs no money and only warns to observe a right which already existed; evidence short of demonstration may easily justify such an order." But "[o]rders for reinstatement with back pay are somewhat different":

"They may impoverish or break an employer, and while they are not in law penal orders, they are in the nature of penalties for the infraction of law. The evidence to justify them ought therefore to be substantial, and surmise or suspicion, even though reasonable, is not enough." 122 F.2d at 438.

Tex-O-Kan may be interpreted as imposing a double standard: reinstatement orders should be subjected to a more onerous test than cease and desist orders.[1] Under the Tex-O-Kan rule, as the Board construes it, the Trial Examiner may not choose between two inconsistent inferences; when employer testimony shows good cause for a discharge of an employee it must be believed unless there is evidence to "impeach" or to "substantially contradict" the employer. Thus, in N. L. R. B. v. Houston Chronicle, 5 Cir. 1954, 211 F.2d 848, 854, the Court expressed the view that where the facts give equal support to two reasonable

[1]. A longer excerpt from the Tex-O-Kan opinion presents the rationale more fairly: "The duty to weigh and test the evidence is of course on the Board. This court may not overrule a fact conclusion supported by substantial evidence, even though we deem it incorrect under all the evidence. *Only when the evidence is such that in a jury trial it would be insufficient to support a like verdict may the judges interfere.* * * * In the matters now concerning us, the controlling and ultimate fact question is the true reason which governed the very person who discharged or refused to reemploy in each instance. There is no doubt that each employee here making complaint was discharged, or if laid off was not reemployed, and that he was at the time a member of the union. In each case such membership

may have been the cause, for the union was not welcomed by the persons having authority to discharge and employ. If no other reason is apparent, union membership may logically be inferred. Even though the discharger disavows it under oath, if he can assign no other credible motive or cause, he need not be believed. But it remains true that the discharger knows the real cause of discharge, it is a fact to which he may swear. If he says it was not union membership or activity, but something else which in fact existed as a ground, his oath cannot be disregarded because of suspicion that he may be lying. There must be impeachment of him, or substantial contradiction, or if circumstances raise doubts, they must be inconsistent with the positive sworn evidence on the exact point." 122 F.2d at 438–39. (Emphasis added.)

conflicting inferences as to motive "substantial evidence has not proved the respondent to be guilty of an unfair labor practice."

2. In 1956 this Court, in N. L. R. B. v. Coats & Clark, 5 Cir., 231 F.2d 567, 572, modified its holding in N. L. R. B. v. Houston Chronicle, 1954, 5 Cir., 211 F.2d 848, stating unequivocally:

"We agree that the initial choice between two equally conflicting inferences of discriminatory or non-discriminatory employer motivation for an employee discharge is primarily the province of the Board, for under the Universal Camera Corp. case, supra, and its substantiality test of review, previously accorded statutory recognition in § 10(e) of the Act, this Court 'may [not] displace the Board's choice between two fairly conflicting views' and inferences, 'even though the court would justifiably have made a different choice had the matter been before it de novo.' 340 U.S. 474, 487–488, 71 S.Ct. 456, 465. But granting that *we may not disturb the Board's choice between equally conflicting inferences where we find both a lawful and unlawful inference of employer motivation 'equally reasonable'*, we think the rationale of all the cases cited does permit our displacement of the Board's initial choice where, as here, we find no substantial evidence on the record considered as a whole, Universal Camera Corp. v. N. L. R. B., supra, to support the inference drawn by it as 'reasonable', and to the contrary, deem it contrary to uncontradicted testimony clearly showing a lawfully motivated discharge 'for cause' under § 10(c) of the Act. N. L. R. B. v. Blue Bell, Inc., 5 Cir., 219 F.2d 796, 798; N. L. R. B. v. General Drivers, etc., 5 Cir., 225 F.2d 205, 211." (Emphasis added.)

When Tex-O-Kan is cited, it is primarily for the statement, "The evidence to justify [reinstatement orders] ought therefore to be substantial, and surmise or suspicion, even though reasonable, is not enough." See, for example, N. L. R. B. v. Ingram, 1960, 273 F.2d 670, 673.

Frosty Morn Meats v. N. L. R. B., 5 Cir. 1961, 296 F.2d 617, 620, is a good example of the Board's misconception of this Court's handling of the substantial evidence rule. In its brief the Board quoted selectively from the opinion to illustrate what it regards as the Fifth Circuit's continued disregard for the substantial evidence standard. In that case the *Court did not refer to Tex-O-Kan.* We said:

Whatever efficacy the Tex-O-Kan rule *once had*, it has no more. In blaming Tex-O-Kan for Florida Citrus and Walton, the Board is whipping a dead horse.[2]

"Under the substantiality test of Universal Camera Corp. v. N. L. R. B., 1951, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456, we may displace the Board's choices but only if there is an absence of substantial evidence on the record considered as a whole. To determine whether the employer has committed an unlawful discrimination, the courts regularly have looked to the motivation, and when conflicting evidence has been offered as to whether the motive was one of just cause or anti-union animus the inquiry has been pursued to find the dominant motive or the moving force. *If an employer motivated by anti-union design discharges an employee, he has violated the statute even though the employee has performed misdeeds which would warrant his dismissal.* E. g., N. L. R. B. v. C. & J. Camp, Inc., 5 Cir., 1954, 216 F.2d 113. But if an employee is discharged for cause, the fact that the employer harbors an antipathy toward the employee grounded in anti-unionism does not make the discharge unlawful. E. g., N. L. R. B. v. Birmingham Publishing Company, 5 Cir., 1959, 262 F.2d 2." (Emphasis added.)

The Court noted that there was "unchallenged testimony of several witnesses, including fellow employees who signed union cards" that Judkins, the discharged employee, was a "slow, uncooperative, and dangerous worker." We held that "when the evidence of just cause for discharge is as great as it is here, the record as a whole does not support the conclusion that the discharged employee was deprived of any right because of union activities." In the course of the opinion we observed that if the "misdeeds of the employee are so flagrant that he would almost certainly be fired anyway there is no room for discrimination to play a part." This was stated with reference to the effect of a discharge on pro-union fellow employees of a discharged employee. We pointed out that a discharge resulting from discriminatory motives "makes others apprehensive" but discharges for a cause, even if there is also union animus present, does not "discourage [fellow employees] from membership in a Union, since all will understand that the employee would have been fired anyway." *This* the Board construes in its brief as an application of the Tex-O-Kan rule and a holding that "even

Moreover, the horse has been dead for years. Thus, in the Florida Citrus opinion, 5 Cir., 311 F.2d 541, on remand, Judge Tuttle, for the Court, made the point:

"There is no lingering doubt in the minds of any of the members of this Court that " '[t]here is no place in the statutory scheme for one test of substantiality of evidence in reinstatement cases and another test in other cases.' 369 U.S. 404, 407, 82 S.Ct. 853, 855, 7 L.Ed.2d 829. We are equally certain that neither in our prior opinion nor in the one now under consideration has this Court applied any standard other than that announced in the Universal Camera Corporation case and reiterated by the Supreme Court in National Labor Relations Board v. Walton Manufacturing Company, and National Labor Relations Board v. Florida

Citrus Canners Cooperative, 369 U.S. 404, 82 S.Ct. 853, 7 L.Ed.2d 829. As we previously stated, 'We think we are required to test the Examiner's credibility findings in the light of his theory of credibility as he has declared it.' We concluded previously, and now adhere to the conclusion, that his expressed theory of credibility is not acceptable. We still conclude that 'sound reason, in this case, requires us to decline to go along with the Examiner in crediting these two General Counsel's witnesses and discrediting Stephenson.' ". 311 F.2d 541, 544.

The author of the first Florida Citrus opinion, our able brother Jones, was also the author of the first opinion in this case. We are as convinced in this case as Judge Tuttle was in Florida Citrus that the Court did not apply an erroneous standard of review.[3] Nevertheless,

though there was evidence in the record which would support the Board's inference that an employee was discharged because of union activity, such inference cannot stand where the misdeeds of the employee are so flagrant that he would almost certainly be fired anyway"!

3. Judge Jones, speaking for the Court, said: "We are aware of the requirement that we are not to overturn the Board's findings if supported by substantial evidence on the record as a whole. We recognize the principle that the substantial evidence rule applies to the choice of inferences as well as to the finding of facts. N. L. R. B. v. Birmingham Publishing Co., 5 Cir., 1958, 262 F.2d 2. We do not question the settled doctrine that the Court should not, as a general proposition, disturb the action of the Examiner and the Board in crediting or discrediting the testimony of a witness. N. L. R. B. v. West Point Manufacturing Co., 5 Cir., 1957, 245 F.2d 783; N. L. R. B. v. The Newton Co., 5 Cir., 1956, 236 F.2d 438. It is not, however, required that the Examiner's findings be given more weight than reason would dictate and, in the light of judicial experience, they deserve. Universal Camera Corporation v. N. L. R. B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456. This Court has had frequent occasion to announce and develop the doctrine that if it appears that there is substantial

evidence on the record as a whole to make the inferences of legal and illegal discharge reasonably equal, we may not overturn the Board's finding of an illegal discharge. N. L. R. B. v. Dan River Mills, Inc., 5 Cir., 1960, 274 F.2d 381; N. L. R .B. v. Fox Manufacturing Co., 5 Cir., 1956, 238 F.2d 211; N. L. R. B. v. The Newton Co., 5 Cir., 1956, 236 F.2d 438; N. L. R. B. v. McGahey, 5 Cir., 1956, 233 F.2d 406; N. L. R. B. v. Coats & Clark, Inc., 5 Cir., 1956, 231 F.2d 567; N. L. R. B. v. Houston Chronicle Publishing Co., 5 Cir., 1954, 211 F.2d 848. The clarification of this rule, as stated in the Houston Chronicle case, by the opinion in Coats & Clark, has not modified the principle that an unlawful motive is not lightly to be inferred. N. L. R. B. v. Dan River Mills, Inc., supra; N. L. R. B. v. Hudson Pulp & Paper Corporation, 5 Cir., 1960, 273 F.2d 660; N. L. R. B. v. Fox Manufacturing Co., supra." 286 F.2d at 22.

The care with which Judge Jones reviewed the record in the light of the substantial evidence rule is evidence from the following quotation. "As we must do in these 'substantial evidence' cases, we have undertaken the tedious task of reading the record and reviewing the evidence; tedious because of the necessity of going from the Board's appendix to the employer's appendix, and so back and forth from one to the other, in an effort to piece together the isolated ex-

Walton squarely presents a Tex-O-Kan problem and in the first opinion this Court did cite and quote from Tex-O-Kan. While the Supreme Court did not hold that this Court's decision was erroneous in Walton, a majority of the Supreme Court concluded:

"We are in doubt as to how the Court of Appeals would have decided these two cases were it rid of the yardstick for reinstatement proceedings fashioned in its Tex-O-Kan decision. * * * Since the special rule for reinstatement cases announced in the Tex-O-Kan opinion apparently colored the review given by the Court of Appeals of these two orders, we remand the cases to it for reconsideration."

The majority opinion in Walton does not purport to overrule or to modify Universal Camera. We have, therefore restudied that decision. It is a two-edged sword, sharpened on the legislative history of the Administrative Procedure Act and the Taft-Hartley Act. We must respect the cutting edge referred to in the excerpts from the opinion noted in the margin.[4] With respect for both edges of Universal Camera, we have reviewed the record before us. As far as possible, we have attempted to

cerpts of testimony which each party has extracted for the purpose of supporting the position for which it contends. The Board incorporates into its appendix nineteen separate quotations from the testimony of the witness, Morris Scharff, and the employer includes thirty-seven selections from the testimony of this witness. The same is also true, to a lesser degree, with respect to the testimony of twenty-five or more of the other witnesses. Our decision is to be based upon the record considered as a whole. Parts of the record, taken out of the context, are not to be considered piecemeal, but we are to consider the record in its entirety and as a unit. This we have attempted to do." 286 F.2d at 19.

4. "The committee reports of both houses refer to the practice of agencies to rely upon 'suspicion, surmise, implications, or plainly incredible evidence,' and indicate that courts are to exact higher standards 'in the exercise of their independent judgment' and on consideration of 'the whole record.' [340 U.S. at 484, 71 S.Ct. at 462] * * * And so we hold that the standard of proof specifically required of the Labor Board by the Taft-Hartley Act is the same as that to be exacted by courts reviewing every administrative action subject to the Administrative Procedure Act. [340 U.S. at 487, 71 S.Ct. at 463] * * * Congress has merely made it clear that a reviewing court is not barred from setting aside a Board decision when it cannot conscientiously find that the evidence supporting that decision is substantial, when viewed in the light that the record in its entirety furnishes, including the body of evidence opposed to the Board's view. [340 U.S. at 488, 71 S.Ct. at 464] * * * The legislative history of these Acts demonstrates a purpose to impose on courts a responsibility which has not always been recognized. [340 U.S. at 488, 71 S.Ct. at 464] * * * We should fail in our duty to effectuate the will of Congress if we denied recognition to expressed Congressional disapproval of the finality accorded to Labor Board findings by some decisions of this and lower courts, or even of the atmosphere which may have favored those decisions. We conclude, therefore, that the Administrative Procedure Act and the Taft-Hartley Act direct that courts must now assume more responsibility for the reasonableness and fairness of Labor Board decisions than some courts have shown in the past. Reviewing courts must be influenced by a feeling that they are not to abdicate the conventional judicial function. Congress has imposed on them responsibility for assuring that the Board keeps within reasonable grounds. That responsibility is not less real because it is limited to enforcing the requirement that evidence appear substantial when viewed, on the record as a whole, by courts invested with the authority and enjoying the prestige of the Courts of Appeals. The Board's findings are entitled to respect; but they must nonetheless be set aside when the record before a Court of Appeals clearly precludes the Board's decision from being justified by a fair estimate of the worth of the testimony of witnesses or its informed judgment on matters within its special competence or both." [340 U.S. at 490, 71 S.Ct. at 465.]

avoid being influenced by the conclusions of the first panel which reviewed the case.

## II.

■ A. *The four discharged employees*. The Board found that Lucille Yancey, Grace McCart, Pearl Coker, and Ruth Brooks were discriminatorily discharged for Union activity. We "cannot conscientiously find that the evidence supporting that decision is substantial, when viewed in the light that the record in its entirety furnishes, including the body of evidence opposed to the Board's view." Universal Camera, 340 U.S. at 488, 71 S.Ct. at 464. We consider it unnecessary to detail our reasons for reaching this result because, although we arrived at our holding as a result of our independent study, we find, upon turning to the original opinion, that we cannot improve upon Judge Jones's careful recital of the facts and conclusions relating to the four discharged employees.

■ B. *The nine laid-off employees*. On the other hand, our review of the record compels us to conclude that there is substantial evidence to support the Board's finding that nine employees were laid off because of their membership in the Union.

January 18, 1958, the Union, in an apparent effort to protect its pro-union employees, wrote Walton a letter identifying twelve employees as members of the Union's volunteer organizing committee and stating that they had been informed of their rights under the Act to engage in self-organization. Morris Scharff, Walton's principal official, promptly interrogated every employee named in the letter. In each case he asked the employee if she had authorized the Union to use her name. When the employee answered affirmatively Scharff placed a checkmark opposite her name. In some cases Scharff asked whether the employee would withdraw her name, and warned her of possible adverse consequences if she refused. Some of the warnings were thinly veiled; for example, "Do you know what this means?", and "Do you realize Evelyn, that this could work a hardship on you?". Scharff then posted the letter with the checkmarks on the company bulletin board.

In the next two weeks, the Company laid off 16 of the 105 employees in the coat plant and several employees in the pants factory. Nine of the sixteen were listed in the Union's letter.

Scharff and another Walton official testified that the layoff was required because of a cutback. They also testified that in selecting employees for layoff the Company applied objective criteria: quality of workmanship, quantity of production, versatility, and seniority. In addition, management produced evidence that a layoff was economically justified and had been decided before receipt of the Union's letter. They showed too that in some instances and in some respects ostensible grounds existed for selections of some of the employees laid off. However, their witnesses were not consistent. In some cases the reasons they gave at the hearing were different from those they gave the employees. Moreover, some of the employees' testimony contradicted the employer's explanation.

This case presents the typical evidentiary situation when employees contend that they were discharged or laid off because of an employer's union animus. Conflicting fair inferences may be reasonably drawn from the evidence as a whole. As this panel sees it, the stronger inference is that the nine employees were selected for layoff because of their Union activity. Applying the standard established in Universal Camera, as clarified in Walton, the Court holds that substantial evidence supports the Trial Examiner's and Board's findings that in laying off nine employees the moving force was the respondents' discriminatory motive.

The petition for enforcement is granted in part and denied in part, as herein provided.