**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**HRIBAR TRUCKING, INC., Respondent.**

**No. 14440.**

United States Court of Appeals
Seventh Circuit.

Oct. 1, 1964.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Richard P. Lawlor, Atty., N. L.R.B., Arnold Ordman, Dominick L. Manoli, Assoc. Gen. Counsel, Elliott Moore, Atty., N.L.R.B., Washington, D. C., for petitioner.

David Leo Uelmen, Milwaukee, Wis., for amicus curiae Teamsters & Chauffeurs Union Local No. 43 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America, Goldberg, Previant & Uelmen, John S. Williamson, Jr., Milwaukee, Wis., of counsel.

Walter S. Davis, Robertson, Hoebreckx & Davis, Milwaukee, Wis., for respondent.

Before SCHNACKENBERG, KNOCH and SWYGERT, Circuit Judges.

KNOCH, Circuit Judge.

The National Labor Relations Board has petitioned this Court for enforcement of its order against Hribar Trucking, Inc., hereinafter called the "Company" (reported 143 NLRB No. 46, 1963 CCH-NLRB ¶12,434).

The Board found that the Company had violated § 8(a)(3) and (1) of the National Labor Relations Act (29 U.S.C.A. § 151 *et seq.*) in discharging its employee Milton Lee Frankwick because he was not a member of Teamsters and Chauffeurs Union Local No. 43 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, hereinafter called the "Union", with which the Company had a collective bargaining agreement in force during the times pertinent to this case.

The Board also adopted the Trial Examiner's finding that the Company was in violation of § 8(a)(1) of the Act by maintaining in effect an illegal union security agreement incorporated in the aforesaid contract with the Union.

The clause in question reads:

Article 1. Union Security Clause

"It is understood and agreed by and between the parties hereto that as a condition of continued employment, all persons who are hereafter employed by the Employer in the unit which is the subject of this agreement *shall make application for membership in the Union immediately upon commencement of the term of employment* and become a member of the Union on or immediately after the thirtieth day following the beginning of their employment, and that the continued employment by the employer in said unit of persons who are already members in good standing of the Union shall be conditioned upon those persons continuing their payment of the periodic dues of the Union. *The failure of any person to make application* to and become a member of the Union within said period of time shall obligate the Employer, upon written notice from the Union to such effect

and to the further effect that Union membership was available to such person on the same terms and conditions generally available to other members, to forthwith discharge such person. Further, the failure of any person to maintain his union membership in good standing by failure to pay the periodic dues of the Union shall, upon written notice to the Employer by the Union to such effect, obligate the Employer to discharge such person."

Another provision states:

"Article 2. Jurisdiction

"It is agreed between the parties hereto that the terms and conditions of this agreement shall apply to all mechanics, truck drivers, helpers, yardmen and warehousemen in the employ of the Employer. * * *

"It is further agreed that *all trucks shall be driven by members of Teamsters and Chauffeurs Union Local No. 43* (unless sanctioned by the Local Officers.)"

The objectionable phrases are emphasized.

■ The Board found, and we agree, that these provisions, as they now read, invade the 30-day grace period required by § 8(a)(3) of the Act. Because of this defect, the Board rejected the Company's contention, offered as an alternative defense, that the union security clause authorized the discharge of Mr. Frankwick.

The agreement does not require union membership as a condition of employment, but improperly requires application for membership on commencement of employment. It meets the requirement of § 8(a)(3) by not invading the 30-day grace period with respect to actual membership.

The uncontroverted evidence shows that neither this provision nor the prohibition against operation of trucks by non-members, was ever enforced or maintained. At the time of his discharge, if he was in fact discharged for non-membership in the Union, Mr. Frankwick had been employed as a truck driver for considerably in excess of thirty days.

■ The objectionable phrases of the agreement are easily severed leaving a valid union security provision evidently negotiated in good faith by the parties under which they may continue to operate. The Board may not disregard the entire agreement because of the objectionable, severable portions, which were never enforced and on which the Company does not rely to justify the discharge. N.L.R.B. v. Rockaway News Supply Co., Inc., 345 U.S. 71, 73 S.Ct. 519, 97 L.Ed. 832 (1953); Truck Drivers Union Local No. 413, International Bro. of Teamsters, etc. v. N.L.R.B., D.C. Cir., 1964, 334 F.2d 539.

■ There was conflicting testimony concerning the events which culminated in the discharge of Mr. Frankwick. The Trial Examiner credited the account of Mr. Frankwick, the charging party, to the effect that he had an altercation about union dues with Leo Lotharius, the Union's representative, who then telephoned the Company's president, Leo Hribar, and instructed him to discharge Mr. Frankwick because he was not a member of the Union. The Trial Examiner disbelieved Mr. Hribar's testimony that he had discharged Mr. Frankwick because of a long list of complaints against him going back many months. These were not limited, he testified, to the telephoned complaint from Mr. Lotharius that Mr. Frankwick had become violent and had threatened to kill him, or the telephoned complaint from Robert Wheller of Consumer's Company, the Company's principal customer, at whose premises the alleged violent encounter occurred. Mr. Wheller, according to Mr. Hribar's testimony, insisted that Mr. Frankwick never again be sent to any of the Consumer's quarries.

The Trial Examiner thought that this evidence was inconsistent with a prior statement made by Mr. Hribar to a Board investigator and with his testimony before the Wisconsin Industrial Commission. The Board relies on that part of

Mr. Hribar's statement to their investigator which reads:

> "Frankwick came in late that afternoon. I told him he was through. I told him—how come you didn't join the union—I asked you to a long time ago. I told him I had a sign up saying he had to join the union. I asked him if he saw the sign the year before. I told him if he couldn't obey the rules I would have to let him go. Frankwick told me had [sic] * * * seen the sign the year before and also this year but he didn't see any need to pay the union his money."

However, just prior to making the statement quoted above, Mr. Hribar told the investigator:

> "The Local 43 man asked me what kind of a maniac I had on the job— 'he almost ran me over'. Leterious [Lotharius] said, 'I don't want him working down in Racine anymore. I'm going to call Milwaukee and see that he doesn't work there either.' Leterious told me to let the man go. He, Leterious didn't mention anything about Frankwick joining the union."

and added:

> "In my opinion Frankwick is not fit to be on a truck anymore. He has an awful nervous condition and is hot headed."

The Board also quotes from proceedings before the Wisconsin Industrial Commission:

> "Q. What did you tell him?
>
> "A. [Mr. Hribar] I told him he was all through, and that he did not need to come back to work any more. * * He asked me why. I said he did not want to follow the rules of the company. I asked him if he saw the sign up on the Time House—that he was supposed to be a union member. He said he had seen it. I was under the impression that he joined the year before. I asked him if he saw it the year before. He said he did. I asked him why he did not go down.

He said he got away with it, last year, and he thought he would get away with it another year. He asked me whether—if he went to the union and got 'squared around'—he could come back. I told him that there were a lot of other reasons that I did not want him back."

Mr. Hribar testified further:

> "Q. Did you tell him about these other reasons?
>
> "A. Yes. I gave him three or four other reasons. * * * I told him about his 'working' at the Milwaukee Underground Construction. The man there called and said they did not want that man back any more. It was his attitude. He did not want to park his truck the way he was supposed to. * * * I also told him about his manner of loading the truck. I don't like the way he loaded his truck. He abused the truck. * * *
>
> "Q. When you told him you were discharging him, because he had not joined the union, he asked you if he could go down and straighten this out with the union; is that right?
> "A. That is right. * * * I told him that that would not do any good. * * * Because I had a half a dozen other reasons why I did not want him back. I gave him a chance a couple of times. * * *
>
> "Q. Is there anybody here from Milwaukee Underground? * * * Why didn't you ask a witness from the Milwaukee Underground to come here and testify? * * * In order to establish your contention with regard to Milwaukee Underground? * * *
>
> "A. As far as I am concerned, if the state wants to pay a man 'Unemployment,'—all right—pay it. I don't care. I don't pay it. The state pays it. Why should I make a big deal out of it and bring in 20 witnesses?"

Other drivers who were not members of the Union were not discharged, although the situation with respect to nonmem-

bership and delinquency in dues existed for a number of years, despite several inquiries and reminders from Mr. Lotharius and the posting of notices of dates and times when the Union office would be open for payment of dues.

The Trial Examiner apparently disregarded the testimony of Leo Lotharius and of Eugene William Parr, an employee of Consumer's, as to the incident involving Mr. Frankwick and Mr. Lotharius, at the Consumer's premises, because he found discrepancies in their account of such incidental detail as the exact time of the day and the number of other trucks present, although they did agree as to the essentials of the occurrence.

Whatever actually happened, it is uncontroverted that Mr. Hribar was told that Mr. Frankwick had threatened Mr. Lotharius' life.

The Trial Examiner does not explain his discrediting of the testimony of Joseph Walter Luvandowski and Richard D. Skarie, two other Company employees, who were present when Mr. Frankwick was discharged. They both testified that when Mr. Frankwick offered to go down to the Union office to straighten things out, Mr. Hribar replied that it would make no difference, that Mr. Hribar didn't care about the Union. He no longer wanted Mr. Frankwick in his employ.

Our study of the record leaves us with the conviction that the Board's finding as to the motivation for Mr. Frankwick's discharge is not supported by substantial evidence on the record considered as a whole. N.L.R.B. v. Walton Mfg. Co., 5 Cir., 1963, 322 F.2d 187; Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951); Portable Electric Tools, Inc. v. N.L.R.B., 7 Cir., 1962, 309 F.2d 423; Celanese Corp. v. N.L.R.B., 7 Cir., 1961, 291 F.2d 224.

The Order of the Board will be modified to require elimination of the objectionable portions of the agreement as aforesaid. In all other respects enforcement of the Board's Order is denied.

Order enforced in part as modified and set aside in part.

SWYGERT, Circuit Judge (dissenting in part).

I dissent from the denial of the enforcement of the Board's order to reinstate the employee Frankwick.

It is the exclusive function of the Board to decide the credibility of the witnesses and resolve conflicts in their testimony. Our function is limited to an inquiry whether the evidence credited by the Board supports the Board's findings. N.L.R.B. v. Aurora City Lines, Inc., 299 F.2d 229 (7th Cir. 1962). The glaring inconsistency between Hribar's testimony before the hearing examiner and his sworn statement to a Board agent justified the Board's discrediting his testimony and believing that of Frankwick. Although the evidence indicates that Frankwick may have been an unsatisfactory employee, it also shows that he was discharged only after the union's business agent had an argument with him about union dues. There was substantial evidence in my opinion to support the Board's finding that the precipitating reason for Frankwick's discharge was his persistent failure to join the union.

In Revere Camera Company v. N.L.R.B., 304 F.2d 162, 164 (7th Cir. 1962) this court said:

"Our review in so far as factual findings of the Board are concerned is limited to a determination of whether or not those findings are supported by substantial evidence on the record considered as a whole. * * * And, conclusions which are reasonable inferences of fact may not be set aside upon judicial review because the courts would have drawn different inferences."

I think we should adhere to this prior pronouncement concerning our limited functions.

I would enforce the order in its entirety.