**BANNER BISCUIT COMPANY,**
Petitioner,

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 17944.

United States Court of Appeals
Eighth Circuit.

Feb. 15, 1966.

---

8. Dr. George W. Randall.

Howard A. Crawford, Kansas City, Mo., made argument for petitioner; Lathrop, Righter, Gordon & Parker and David R. Smalley, Kansas City, Mo., were with him on the brief.

Joseph C. Thackery, Atty., N. L. R. B., Washington, D. C., made argument for respondent; Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, and Marcel Mallet-Prevost, Asst. Gen. Counsel, N. L. R. B., and Gary Green, Atty., N. L. R. B., Washington, D. C., were with him on the brief.

Before VAN OOSTERHOUT, BLACKMUN and MEHAFFY, Circuit Judges.

MEHAFFY, Circuit Judge.

Petitioner, Banner Biscuit Company, seeks to review and set aside an order of the National Labor Relations Board, which, in turn, has filed a cross-application for enforcement.[1] The Board, in adopting the Examiner's opinion, found Banner in violation of §§ 8(a) (1) and (3) of the National Labor Relations Act, as amended, by unlawfully interrogating and threatening two employees and by discriminatorily discharging one of them.[2] We reverse both findings.

Banner operates a plant in Carrollton, Missouri, where it manufactures cookies and other bakery products. There are approximately one hundred employees. The discharged employee, Helen Allwood, began her employment at Banner in September, 1955 and at the time of her termination stood sixth in seniority. Her duties were confined primarily to packing cookies on a production line although she was knowledgeable of other operations and had on occasions served as forelady.

After Union organizational efforts during the spring of 1963, a certification election was held on May 1.[3] Allwood actively supported the Union (with Banner's knowledge) and during the preelection campaign offered her home for Union meetings. At the election she served as Union observer and challenged the eligibility of three or four individuals requesting ballots.

The Union lost the election. The day after, Banner Vice President and General Manager Anderson urged that "everyone go back to work and let bygones be bygones." Employees and supervisors alike were warned that discrimination among employees and inquiries of how anyone voted would not be tolerated. This same morning Anderson observed Allwood crying, and after efforts to comfort her was advised that "it wasn't losing the election but the fact that she thought she was doing

1.  61 Stat. 136, 29 U.S.C.A. § 151 et seq.

2.  29 U.S.C.A. § 158(a) (1) and (3):
    "(a) It shall be an unfair labor practice for an employer—
    "(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title;
        *     *     *     *     *

"(3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization * * *."

3.  American Bakery and Confectionery Workers International Union, AFL–CIO.

what people wanted her to do and that they had turned on her." [4]

Five months later on September 30, 1963, Allwood was discharged. Banner cited some ten deeds of misconduct creating friction and hostility among the employees, including insubordination and disrespect to superiors; usurpation of authority and arbitrary instructions to fellow workers; creation of an atmosphere of distrust, fear and suspicion by simulated gossip and whispering creating the feeling that a particular employee was the object of derogatory and derisive comments; excessive use of profanity; spreading false rumors about the Company's profit sharing plan; and making unauthorized and forbidden changes in production apparatus. Because of Allwood's continuous backbiting and bickering, three good employees, unable to cope with such conditions, quit their jobs; production decreased; and the feeling of a close relationship between employer and employee, so necessary for successful operations, was lost. Banner, in similar fashion, reported the disappearance of the above mentioned conditions soon after Allwood's separation.

The Union attributed Allwood's discharge to her Union interest and activity of the previous May and accused Banner of "busily compiling" a "dossier" giving respectability to their sinister motives.

■ Banner's position that the Examiner's findings are not supported by substantial evidence necessitates our review of the record in its entirety. 29 U.S.C.A. § 160(f); Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951); N. L. R. B. v. Fruin-Colnon Const. Co., 330 F. 2d 885 (8th Cir. 1964); N. L. R. B. v. South Rambler Co., 324 F.2d 447 (8th Cir. 1963); Osceola County Co-Op. Creamery Ass'n v. N. L. R. B., 251 F.2d 62, 63–64 (8th Cir. 1958).

■ At the outset, our attention is called to the Examiner's "hostile" attitude towards the Company's case as expressed in his "cynical, contemptuous and scornful view of the employer's sworn testimony." We would not hesitate to reverse upon a clear conviction of bias and hostility but the Examiner's language here, although somewhat disparaging, does not betray an attitude preventing a fair hearing and necessitating a remand. See A. O. Smith Corp. v. N. L. R. B., 343 F.2d 103 (7th Cir. 1965).

■ An examiner may give credence and weight to the testimony of the general counsel's witnesses in preference to that of the employer. N. L. R. B. v. Morrison Cafeteria Co., 311 F.2d 534, 538 (8th Cir. 1963); N. L. R. B. v. Federal Dairy Co., 297 F.2d 487 (1st Cir. 1962); N. L. R. B. v. Local 815, Teamsters Union, 290 F.2d 99 (2nd Cir. 1961). But, a complete disregard for sworn testimony coupled with a tongue-in-cheek characterization of those utterances as "regaled with * * * trivialities" or its absence which "spared [the Examiner and General Counsel] the denouement of [a] momentous situation" depreciates the examiner's findings and obliges our close examination. A. O. Smith Corp. v. N. L. R. B., supra; N. L. R. B. v. Florida Citrus Canners Coop., 311 F.2d 541, 543 (5th Cir. 1963).

*Section 8(a) (1)—Interrogation*

The first § 8(a) (1) violation concerns a conversation between Anderson and Allwood occurring about two days prior to the May 1 election.[5] Anderson indicated that he distinctly remembered asking Allwood to come to his office where they had a "very good heart to heart talk." In substance, Anderson "asked [Allwood] what she thought she gained by having a union in the plant * * * I [Anderson] went back into the history from the time she started, the trouble she had at home and all about

---

4. Allwood's testimony concerning the incident included only the following:
   "He [Anderson] was very nice to me. He said, 'The election is over, now let's

all go out there and work, work together and get along.' He was very nice to me."

5. Anderson testified that the conversation occurred prior to April.

the way we worked together and what a good employee she had been and why she wanted to upset the apple cart now. * * * " [6] Anderson denied making any promises of special benefits for her withdrawal from Union activities nor did he threaten her with any reprisals.

Allwood's testimony verified Anderson's explanation of the substance of this conversation and additionally answered his inquiry of what she gained from the Union in expressing that she "wanted * * * the work to be slowed down to where I thought I would be able to do it the rest of my life."

The Trial Examiner found that Anderson's "question under the circumstances tends to limit employees' freedom of choice and suggested an offer of benefit as a substitute for selecting the Union."

■ Anderson's inquiry of "what [Allwood] wanted" cannot be construed as an offer of benefit or a limitation upon Allwood's freedom of choice when taken in context and answered by the immediate reply that she expected the work to be reduced. The inquiry was made of an honest employee knowledgeable of plant production and policies and obviously concerned for her welfare and betterment. A reasonable interpretation discloses the Union as the benefactor of Allwood's expectations and absolves Anderson of unlawfully soliciting support for Banner. Beaver Valley Canning Co. v. N. L. R. B., 332 F.2d 429 (8th Cir. 1964). There is simply no record evidence that this conversation contained coercive or restrictive insinuations. Lincoln Bearing Co. v. N. L. R. B., 311 F.2d 48 (6th Cir. 1962); accord: N. L. R. B. v. Byrds Mfg. Co., 324 F.2d 329, 332 (8th Cir. 1963); Marshfield Steel v. N. L. R. B., 324 F.2d 333, 335–336 (8th Cir. 1963).

The second violation of § 8(a) (1) involved an alleged conversation between Plant Superintendent McNiece and an employee, Marilyn Winfrey. According to Winfrey's testimony, the conversation took place in August of 1963 and that "[Mr. McNiece] told me [Mrs. Winfrey] he heard the union man was in town and he asked me if I had seen him. I avoided him, I didn't want to answer him. He said did Delty [Mrs. Winfrey's husband] talk to him and I said yes. He said the best thing for you two [Mrs. Winfrey and her husband, Delty] would be to leave the union alone."

This particular conversation was neither verified nor denied, nor in any way explored in either the direct or cross-examination of McNiece, who did emphatically deny any individual conversation with employees about the Union from at least election time until Allwood was discharged. In the words of the Examiner, this "threat tend[s] to interfere with employees' protected concerted activities and constitute[s] unlawful threat and interrogation as alleged. As Mrs. Winfrey sought to avoid the discussion, McNiece's statement was no mere expression of opinion without threat."

■■ We said in Beaver Valley Canning Co. v. N. L. R. B., supra, that "isolated interrogation, free of coercive statements and absent resort to systematic intimidation, is not unlawful conduct per se." 332 F.2d at 433. The tenor of McNiece's expressions betray, at most, a general animus and hostility for Union sympathizers. It carries no threat or indication of coercion and represents attitude without action.

■ As succinctly stated by the Fifth Circuit in N. L. R. B. v. McGahey, 233 F.2d 406, 410 (5th Cir. 1956):

" * * * [I]nterrogation becomes unlawful when it is a part of the means by which the employer's hostility carries with it the purpose to retaliate against Union sympathizers and by threat of job or other reprisals, coerce them into a vote of ac-

---

6. The Board's brief points out that Allwood's husband had been killed in an industrial accident and that she supported two children as a Banner employee.

tion which does not express their free will."

Finding a "threat" in McNiece's naked statement, communicated to a single employee, evidencing no course of present, past or future coercive conduct, and uttered three months after the certification election is unwarranted.[7] 29 U.S.C.A. § 158(c); N.L.R.B. v. Council Mfg. Corp., 334 F.2d 161, 165 (8th Cir. 1964); N.L.R.B. v. Trumbull Asphalt, 327 F.2d 841, 844 (8th Cir. 1964); Beaver Valley Canning Co. v. N.L.R.B., supra; J. S. Dillon & Sons Stores Co. v. N.L.R.B. 338 F.2d 395, 399–400 (10th Cir. 1964); accord: N.L.R.B. v. Byrds Mfg. Corp., supra; Marshfield Steel Co. v. N.L.R.B., supra.

### Section 8(a) (3)—Discharge

■ It would serve no worthwhile purpose to relate in detail Banner and the Board's conflicting explanations of Allwood's recalcitrant conduct. Nor is there reason to explore these incidents to develop a business justification or show the cumulative effect of Allwood's actions as unduly straining Banner's patience. Fort Smith Broadcasting Co. v. N.L.R.B., 341 F.2d 874 (8th Cir. 1965). Here, the Board has failed to establish that quantum of evidence necessary to demand justification. Banner had the unbridled right to discharge Allwood absent a showing of unlawful motive as "[m]anagement can discharge for good cause, or bad cause, or no cause at all. It has, as

the master of its own business affairs, complete freedom with but one specific definite qualification: it may not discharge when the real motivating purpose is to do that which Section 8(a) (3) forbids." NLRB v. McGahey, supra, 233 F.2d at 413; Steel Industries, Inc. v. N.L.R.B., 325 F.2d 173, 176 (7th Cir. 1963). The burden is upon the Board to show by preponderance of the evidence that the unlawful motive was discriminatory and did, in fact, result in the discouragement of Union membership. American Ship Bldg. Co. v. N.L.R.B., 380 U.S. 300, 85 S.Ct. 955, 13 L.Ed.2d 855 (1965); N.L.R.B. v. Brown, 380 U.S. 278, 85 S.Ct. 980, 13 L.Ed.2d 839 (1965); N.L.R.B. v. Council Mfg. Corp., supra; Iowa Beef Packers, Inc. v. N.L.R.B. 331 F.2d 176, 182 (8th Cir. 1964).

■ Justifiable ground for dismissal is no defense when it is but a pretext and not the moving cause. N. L. R. B. v. Solo Cup Co., 237 F.2d 521, 525 (8th Cir. 1956). Judge Matthes in N. L. R. B. v. South Rambler Co., 324 F.2d 447 (8th Cir. 1963) stated the principle applicable in assessing this pretext:

"Certainly, an employer may hire and discharge at will, so long as his action is not based on opposition to union activities. * * * Furthermore, an employer's general hostility to unions, without more, does not supply an unlawful motive as to a specific discharge. * * * An inference that a discharge of an em-

7. The amended charge filed November 26, 1963 contained the first allegation of unlawful interrogation and threats of reprisals in violation of § 8(a) (1). Specifically alleged were the Anderson-Allwood and McNiece-Winfrey incidents covered in this opinion. The original charge filed October 10, 1963 contained only a blanket allegation of interference, restraint and coercion by unlawfully terminating Allwood because of her involvement in Union and other protected activity. Banner contends that these are distinct, specific, unconnected violations so that the amended

charge does not relate back to the date of the original charge. Under § 10(b) of the Act (29 U.S.C.A. § 160(b)), confining unfair labor practices to those occurring within six months of the filing of the charge, the Anderson-Allwood conversation would be excluded as falling beyond the permissible six-month limit. E. g., Joanna Cotton Mills Co. v. N. L. R. B., 176 F.2d 749 (4th Cir. 1949). Because of our disposition of the case, we prefer to answer the § 8(a) (1) issues rather than develop this collateral procedural problem.

ployee was motivated by his union activity must be based upon evidence, direct or circumstantial, not upon mere suspicion, * * * and the burden of proving an improper motive for discharge is upon the Board. (Citations omitted.)" Id. at 449–450.

[10] The Board offers as "substantial evidence" for its finding that Banner discharged Allwood for the ulterior motive of discouraging Union activity the uncorroborated testimony of two Banner employees, each testifying to a separate statement made to them by Anderson. First, on May 3, Anderson told Delty Winfrey that there would probably be hard core unionists at Banner and bickering at the plant. Anderson also expressed disappointment at Allwood's Union interest and allegedly stated that some changes might have to be made. The second statement occurred two months later in July when returning employee Margaret Hedrick testified that Anderson asked if she had heard of the Union difficulty and hoped that there would be no trouble from her. There is no record evidence of any Union activity at Banner after May 1, nor is there any evidence that Allwood espoused the Union cause after the election. With the bare exceptions of the two statements noted above, there is simply no showing by the Board of any unlawful motive, discrimination or resulting discouragement of Union membership. We cannot in good faith base a § 8(a) (3) violation on these meager statements which constitute at most mere suspicion. N. L. R. B. v. South Rambler Co., supra; N. L. R. B. v. Council Mfg. Co., supra.

We conclude that the evidence on the whole fails to support either of the violations charged. The order of the Board is set aside and the cross-application for enforcement is denied.