FARMBEST, INC., Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

CRAWFORD COUNTY INDUSTRIAL LABOR UNION and Crawford County Industrial Labor Union, Unit No. 1, Respondent.

Nos. 18180, 18220.

United States Court of Appeals Eighth Circuit.

Jan. 17, 1967.

James L. Rogers and John C. Cortesio, Jr., and Bradshaw, Fowler, Proctor & Fairgrave, Des Moines, Iowa, for petitioner Farmbest Inc. and filed brief.

Julius Rosenbaum, Atty., N.L.R.B., Washington, D. C., for the Labor Board. Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel and Herman M. Levy, Atty., N.L.R.B., Washington, D. C., were with him on the brief.

Before VOGEL, Chief Judge, MATTHES and MEHAFFY, Circuit Judges.

MEHAFFY, Circuit Judge.

This case is before the court upon the petition of Farmbest, Inc. to review a decision and order of the National Labor Relations Board and upon the Board's cross-petition for enforcement against Farmbest, and the Board's petition for enforcement against the Crawford County Industrial Labor Union and Crawford County Industrial Labor Union, Unit No. 1.[1]

The Board found that Farmbest violated § 8(a) (3) and (1) of the National Labor Relations Act by discharging employee John Janning. The Board also found that Farmbest and the Union violated § 8(a) (1) and (2), § 8(b) (1) (A) and § 8(b) (2) of the Act by entering into and maintaining a collective bargaining agreement which provided for the automatic termination of "all policies, benefits, and provisions" of the agreement in the event of "change in the representative status for employees of the company." Additionally, the Board found that the Union violated § 8(b) (1) (A) of the Act by requesting a Farmbest employee to furnish it with a copy of his pretrial statement given to a Board agent, and by interrogating a Farmbest employee concerning the testimony he anticipated giving at a Board proceeding.

Farmbest is a cooperative corporation operating a meat plant at Denison, Iowa. The Consumers Cooperative Association is the dominant stockholder in Farmbest and provides it with working capital, and extends to Farmbest employees insurance, retirement, workmen's compensation and other such programs. It can fairly be said that Consumers controls Farmbest. The Union involved is the Crawford County Industrial Labor Union characterized by trial examiners as a capable and effective organization.[2]

Amalgamated Meat Cutters and Butcher Workmen of North America, AFL-CIO, to be referred to hereafter as Amalgamated, is a union which has periodically attempted to organize Farmbest em-

---

1. Separate complaints were filed against Farmbest and the Union but the cases were consolidated for trial.

2. The stipulated history of Farmbest's (formerly Crawford County Packing Company) prior Board proceedings follows:

   "The second stipulation is with respect to prior Board proceedings, the first of which was a representation election held on September 30, 1958, in Denison in Case No. 18–RC–3715, involving this employer, who was then known as Crawford County Packing Company, and the results of that election, as shown by the tally of ballots, were as follows: Approximate number of eligible voters, 66; votes cast for United Packinghouse Workers of America, 33; votes cast for Amalgamated Meat Cutters and Butcher Workmen of North America, AFL-CIO, 31; total votes cast, 64.

   "The next case was an election held on January 20, 1960, involving this employer, who was then known as Crawford County Packing Company, in Case No. 18–RD–211. The tally of ballots in that case shows that there were approximately 96 eligible voters. There was one void ballot cast. There were seven ballots cast for the United Packinghouse Workers of America, AFL-CIO; there were three ballots cast for the Amalgamated Meat Cutters and Butcher Workmen of North America, AFL-CIO; there were 72 ballots cast for no union, and there were 11 challenged ballots, for a total of 93 ballots cast."

ployees, making a particularly intensive effort in 1962.

*Discharge of John Janning.*

Without notice to Farmbest, Janning took unauthorized leave from his work on April 16, 1963, but returned on April 23, reporting that his absence was due to illness. He presented a doctor's statement that he needed dental work. Janning attempted to obtain sick pay for the time he had taken off. During Janning's absence, a fellow employee reported to a supervisor that Janning was working on a new home he had under construction. Farmbest Manager Crabb was informed by Janning's supervisor of Janning's absence. After further investigation, Manager Crabb learned from Janning's doctor that Janning need not have missed work as he required only some dental work which could be obtained on his day off. Upon ascertainment of these facts, Manager Crabb telephoned Fred Claxton, Assistant Regional Manager of Consumers, the parent company, relating the facts surrounding Janning's absence and attempt to collect sick pay. Claxton was not acquainted with Janning and knew nothing of his union activities, but advised Crabb of the company's policy of discharging employees who abused their sick pay privileges. He told Manager Crabb that other employees had been discharged for similar misconduct and recommended that Janning be discharged. Manager Crabb then ordered the discharge.

The Board found that the discharge of Janning was partially for cause but that an additional moving cause was Janning's advocacy of strong enforcement of the terms of the collective bargaining agreement.[3]

Specifically, by adopting the Trial Examiner's decision, the Board found that Janning was discharged for having engaged in concerted activities by lodging complaints with management on behalf of himself and other employees concerning Farmbest's failure to post and fill job vacancies in accordance with the terms of the collective bargaining agreement.[4]

Janning served as president of the Union in 1962 and in 1963 served as one of the employee members of the seniority board. Additionally, during this time he was active in assisting Amalgamated in its drive to organize Farmbest. Farmbest had knowledge of Janning's union activities. There are only two instances of asserted advocacy for strong enforcement of the agreement that form the basis of the Board's order. We will treat them separately.

*A. Job Posting.*

Janning testified that some of the employees had complained to him about Farmbest's laxity in posting and filling job vacancies. Janning discussed this problem with a local newspaper editor but there was never any formal grievance filed by Janning or any other employee. In March of 1963 Janning advised Manager Crabb that there was dissatisfaction

3. "As I view this matter, contrary to both the General Counsel and Farmbest, the Company did not discharge Janning for engaging in activities on behalf of Amalgamated per se, but did so because Janning had become an advocate of strong enforcement of the terms of the collective bargaining agreement between Farmbest and the Union, and in so doing had fomented unrest among Farmbest's employees. The discharge of Janning, I find on the record before me, was partially for cause, on the grounds of Janning's unauthorized absence and his accompanying effort to collect compensation under the Company's sick leave program. But I am convinced that this was not the *sole* motivating cause, but that Janning's ac-

tivities in seeking enforcement of the terms of the collective bargaining agreement was a *moving* cause."

4. "In the circumstances, I conclude and find that John Janning was discharged by Farmbest for having engaged in concerted activities by lodging complaints with management on behalf of himself and other employees concerning the failure of the Company to post and fill jobs in accordance with the terms of the collective bargaining agreement between the Company and the Union, and that his discharge violated Section 8(a) (1) and Section 8(a) (3) of the Act, and in the circumstances here existing, Section 8(a) (2)."

among the employees stemming from Farmbest's failure to properly post and fill job vacancies. Manager Crabb immediately called a meeting of the seniority board to consider this complaint. Upon finding that there had been some laxity, Crabb immediately ordered its rectification. The following morning several job vacancies were posted on the bulletin board. At the meeting, Manager Crabb expressed the hope that any future like occurrences would be brought directly to management's attention rather than being bruited about among the employees and particularly with outsiders.

### B. Janning's Job Assignment.

At the time of his discharge, Janning was a "torch operator" although he was frequently permitted to work in a higher paying "ham shaver" job. Janning had been taught by his supervisor to do ham shaving work and was permitted to substitute for one of the ham shavers when the need or occasion arose. Janning contended that he was senior over fellow employee Christensen for a ham shaving job. When his complaint got to his supervisor, Tierney, the seniority board was convened to resolve the controversy. Janning was a member of this board. The other board members present unanimously ruled in favor of Christensen. The Trial Examiner found that this was entirely justified under the evidence, and Janning made no further complaint about his job assignment.

The Trial Examiner's findings do not warrant the conclusion reached as the record as a whole is totally lacking in substantial evidence to support the conclusion that Janning's strong advocacy of strict contract enforcement was a cause for the discharge. There was no grievance filed in connection with the job posting laxity and certainly Janning, who had been president of the Union and was at the very time a member of the seniority board, had knowledge of the proper procedural steps to be taken under the contract terms. Furthermore, immediately upon Janning's bringing this complaint to the manager, a meeting was called and the situation promptly corrected. The Trial Examiner found the remarks made by the president about bringing the matters to the company's attention was occasioned by Janning's own volunteered reference to an earlier conversation with the newspaper man, and "constitutes nothing more than a mild admonition favoring discreet settlement of plant personnel problems, and falls far short of a reprimand intended or calculated to interfere, restrain or coerce Janning, or any other employee, in concertedly lodging complaints or grievances concerning working conditions at the plant."

Janning's complaint about the ham shaving job assignment was in fact duly processed to the seniority board but not at Janning's insistence or even at his suggestion. His persistent complaints about the job assignment caused his supervisor to have a meeting of the seniority board to resolve the dispute.

It is thus seen that in neither instance did Janning evince any strong advocacy for strict compliance with the terms of the contract.

More importantly, the record evidence does not justify a conclusion that the discharge was motivated in the slightest by any antiunion animus. There is no evidence that the Company ever reprimanded Janning although it was known for the past year that he had been actively engaged in assisting Amalgamated in its drive to organize the plant. Janning was consistently favored, before and after the incidents described above, by being permitted to work at the higher paying ham shaving job a big part of the time. Justifiable ground for dismissal is no defense when it is but a pretext and not the moving cause. N. L. R. B. v. Solo Cup Co., 237 F.2d 521, 525 (8th Cir. 1956). But, even if an employer has general hostility to unions, that fact without more does not supply an unlawful motive to a specific discharge. Any such inference that a discharge was motivated by an employee's union activity must be based on evidence and the burden of proving such improper motive is upon the Board. N. L. R. B. v. South Rambler Co., 324 F.2d 447 (8th Cir. 1963). Because

an employee is a labor protagonist does not insulate him from discharge whether or not any cause for his discharge exists just so long as management acts without an unlawful motive. Banner Biscuit Co. v. N. L. R. B., 356 F.2d 765 (8th Cir. 1966).[5]

Our canvass of the entire record leaves us with the firm conclusion that there is no record evidence that the discharge of Janning was unlawful or that it was motivated in any degree by Janning's union activities. The evidence considered as a whole does not warrant even a suspicion of unlawful motivation in the discharge of Janning, and the order must, therefore, be set aside as it relates to this discharge issue.

*Other Board Findings.*

The Board also found that the Company and the Union violated § 8(a) (1) and (2) and § 8(b) (1) (a) and § 8(b) (2) of the Act respectively by entering into and maintaining a collective bargaining agreement which provided for the automatic termination of "all policies, benefits and provisions" of the agreement in the event of any change in representation status for the employees. Additionally, the Board found that the Union violated § 8(b (1) (A) of the Act by requesting a Company employee to furnish it with a copy of a pretrial statement given to the Board and by interrogating a Company employee concerning testimony he anticipated giving at a Board proceeding.

The Company contends that the issues affecting it are moot because it has complied with the Board's order, and further that, while the record does not show it, the Board has now certified a union as representative of Farmbest's employees in the unit involved in these proceedings.

It appears from brief that the Union has also fully complied with the decision

and has advised the Board that by reason of its prior and continued compliance with the Trial Examiner's decision it would not appear in this proceeding.

■ Acquiescence in or obeyance of a Board order does not render the question moot. The Supreme Court said in N. L. R. B. v. Penn. Greyhound Lines, Inc., 303 U.S. 261, 271, 58 S.Ct. 571, 576, 82 L.Ed. 831 (1938): "But an order of the character made by the Board, lawful when made, does not become moot because it is obeyed or because changing circumstances indicate that the need for it may be less than when made."

■ Accordingly, the order of the Board will be enforced except as to the discharge of employee Janning.

Order as modified,

Enforced.

---

5. "Banner had the unbridled right to discharge Allwood absent a showing of unlawful motive as '/m/anagement can discharge for good cause, or bad cause, or no cause at all. It has, as the master of its own business affairs, complete freedom with but one specific definite qualification: it may not discharge when the

real motivating purpose is to do that which Section 8(a) (3) forbids.' (Citations omitted.) The burden is upon the Board to show by preponderance of the evidence that the unlawful motive was discriminatory and did, in fact, result in the discouragement of Union membership. (Citations omitted.)" 356 F.2d at 770.