**TONKIN CORP. OF CALIFORNIA, d/b/a Seven-Up Bottling Co. of Sacramento, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 23112.

United States Court of Appeals
Ninth Circuit.

Dec. 30, 1969.

M. B. Jackson (argued), Charles Mc-Kenney, of Hodge, Jackson, Kumler & Croskey, Los Angeles, Cal., for appellant.

Michael F. Rosenblum (argued), El-liott Moore, Atty. N.L.R.B., Marcel Mal-let-Prevost, Asst. Gen. Counsel, N.L.R.B., Washington, D. C., LeProhn & LeProhn, San Francisco, Cal., Roy O. Hoffman, Dir. N.L.R.B., San Francisco, Cal., for appellee.

Before BARNES, BROWNING and WRIGHT, Circuit Judges.

BARNES, Circuit Judge:

On January 15, and April 8, 1965, petitioner was charged by the Chauffeurs, Teamsters & Helpers Local No. 150 of the International Brotherhood of Teamsters, et al. with violation of sections 8(a) (1), (2), (3), and (5) of the National Labor Relations Act (29 U.S.C. § 158(a) *et seq.*), which define unfair labor practices. On May 25, 1965, a Trial Examiner of the National Labor Relations Board found violations of section 8(a) (1), (2) and (5) of the Act (C.T. 23–41), but deemed it unnecessary to pass on the allegation that section 8(a) (3) had been violated. A cease and desist order against further violations and other remedial relief was granted.

Petitioner took exception to the findings of the Trial Examiner, as did the General Counsel for the Board. The Board reviewed the case and adopted the conclusions of the Trial Examiner except that it found that section 8(a) (3) of the Act had been violated. It modified the earlier order of the Trial Examiner accordingly.

Tonkin filed this petition for review under section 10(f) (29 U.S.C. § 160(f) of the Act and the Board cross-petitioned for enforcement of its order under section 10(e) (29 U.S.C. § 160(e)). Our jurisdiction rests upon section 10(f) of the Act. We enforce the Board's order.

This is not the first time that labor disputes have brought these parties before this court. The events leading up to the present difficulty began in March 1963 when Tonkin Corporation, acting through its president, illegally locked out its employees in violation of § 8(a) (1), (2), and (3) of the Act in an attempt "to prevent its employees from having a free choice in determining its bargaining representatives." Tonkin Corp. of California v. NLRB, 392 F.2d 141, 145 (9th Cir. 1968). It had previously been determined by the Board, with the subsequent approval of this court, that an employee of Tonkin, (one Barwise) had been discharged in violation of §§ 8(a) (1), (3) of the Act for engaging in solici-

tation for the Teamster's Union. NLRB v. Tonkin Corp. of California, 352 F.2d 509, 511 (9th Cir. 1965).

The matter presently before us cannot be looked upon as though these previous cases did not exist. There was common motivation for both of these actions. It was found by the Board and affirmed by this court that petitioner had attempted to discourage employees from selecting Local 150 of the International Brotherhood of Teamsters as their bargaining agent and to encourage their continued affiliation with the independent Sacramento Seven-Up Employees' Union (herein "independent").

The alleged illegal activities giving rise to the instant case occurred a year and a half later than the above mentioned matters. The general factual background of the case is not in issue. Specifically, it is undisputed that numerous conversations took place between management personnel and employees of Tonkin during this period (late 1964 and early 1965); that Tonkin attempted to institute a radically different distribution system (Pet. Br. 30–43); that ten of Tonkin's twelve distribution personnel were discharged for their refusal to participate in the revised distribution program (Pet. Br. 47); and, finally, that Tonkin continued to withhold union dues for the Independent without contractual authority. (Pet. Br. 69)

After four days of hearings in August, 1965, during which extensive testimony was taken from all parties involved, the Trial Examiner reached the following conclusions:

"5. By refusing on and after December 16, 1964, to recognize and bargain with the Union, and by unilaterally changing the status of its driver-employees to distributors, Respondent has engaged in unfair labor practices within the meaning of Section 8(a) (5) of the Act.[1]

"6. By urging its employees to form an independent union and by checking off dues without any contractual support therefor in behalf of Sacramento 7-Up Employees' Union Respondent has engaged in unfair labor practices within the meaning of Section 8(a) (2) of the Act.

"7. By terminating * * * [names here omitted] Respondent has engaged in unfair labor practices within the meaning of Section 8(a) (5) of the Act.

"8. By the foregoing conduct, by interrogating employees concerning their union activities, by threatening to withdraw recognition of the Union after one year if certified, by giving employees the impression that union meetings were under surveillance, by telling employees that its distributorship plan was a device to keep the Union out of the plant, by threatening reprisals for engaging in union activities, by questioning employees as to the identities of union leaders in the plant, by interrogating employees whether they had signed union cards and by stating that the employees could form their own independent union and obtain a better contract than with the Union, Respondent has engaged in unfair labor practices within the meaning of Section 8(a) (1) of the Act." (C.T. 39–40)

The Board adopted the findings, conclusions and recommendations of the Trial Examiner with one modification. It found the change in distribution scheme to be in violation of section 8(a) (3) and (1) of the Act, as charged in the original complaint. This finding was based upon the following reasoning:

"In sum, in view of the history of longstanding opposition to the Teamsters Union becoming the bargaining representative of its employees as evi-

---

1. The Trial Examiner assumed that the change in distribution system "was initially made for economic considerations only" and thus did not violate sections 8(a) (3) and (1) of the Act. As is discussed in the text, *post*, the Board found to the contrary on this issue.

denced by the facts found in our initial decision involving this Respondent and the more recent incidents related previously, we conclude and find that Respondent's change to a distributorship system was not motivated by economic reasons but to the contrary was motivated in substantial part by a discriminatory reason, i. e., to change the status of its employees to independent contractors in order to deny them representation by the Teamsters Union." (C.T. 81)

The conclusions of the Trial Examiner and the order to cease and desist from unfair labor practices, as enumerated *supra,* were modified so as to be consistent with the foregoing additional finding of the Board.

■ We view petitioner's one-hundred and five page opening brief and accompanying pamphlet listing thirty-seven typographical errors and omissions in that brief as raising a single legal issue: Were the factual findings and conclusions of the Board based upon substantial evidence? We hold that they were.

Petitioner correctly points to the Supreme Court decision of Universal Camera Corp. v. NLRB, 340 U.S. 474, 496, 71 S.Ct. 456, 95 L.Ed. 456 as defining the scope of judicial review of orders of the Board in terms of an inquiry into whether they rest upon substantial evidence as found in the record as a whole. Mr. Justice Frankfurter articulated the standard as follows:

"The findings of the examiner are to be considered along with the consistency and inherent probability of testimony. The significance of his report, of course, depends largely on the importance of credibility in the particular case. To give it this significance does not seem to us materially more difficult than to heed the other factors which in sum determine whether evidence is 'substantial.'" (340 U.S. at 496–497, 71 S.Ct. at 169)

Petitioner contends that the Trial Examiner completely ignored the testimony favorable to it and that:

"[a] complete disregard for the sworn testimony of either party depreciates the examiner's findings and suggests their close examination by the Court. Banner Biscuit v. N. L. R. B., 356 F.2d 765, 768 (8th Cir. 1966)." (Pet. Br. 29)

■ Although we are not bound by the *Banner* decision, we nevertheless respect the theory it advocates. However, we think the factual situation in that case, involving as it did isolated conversations between management and employees, is far different than the one before us. As evidenced by the headings in petitioner's brief (Pet. Br. 70–92), there were at least eleven separate conversations in which union activity was discussed. We do not think the Trial Examiner erred in crediting the employees rather than the management and thus finding in these conversations a common theme of antipathy by management toward the Teamsters in violation of section 8(a) (1) of the Act.

The Board, contrary to the Trial Examiner, found it appropriate to determine the legality of the motivation behind the change in distribution scheme. As discussed earlier, it found the reason for the change in the manner of distribution to be inextricably enmeshed in the facts of the earlier cases, *supra,* which both were resolved against the petitioner. We hold there was substantial evidence from which it could have been concluded that the change in distribution scheme was motivated by a desire to counter the attempts of the Teamsters to organize the Tonkin employees by attempting to place a large group of potential Teamster members beyond the reach of the Act by making them independent contractors. General Teamsters, Chauffeurs and Helpers, Union Local No. 782, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America v. NLRB, 126 U.S.App.D.C. 1, 373 F.2d 661 (1967), cert. denied, Blue Cab Co. v.

NLRB, 389 U.S. 837, 88 S.Ct. 54, 19 L.Ed.2d 100; NLRB v. Goya Foods, Inc., 303 F.2d 442 (2d Cir. 1962), cert. denied 371 U.S. 911, 83 S.Ct. 256, 9 L.Ed.2d 171.

The findings and legal conclusions concerning the dues deductions in absence of contractual authority, which was found to be in violation of section 8(a) (2), and the admitted refusal to bargain, which violated section 8(a) (5) (1), are fully supported by the record and need no further discussion. Accordingly, the petition to review and set aside the order of the Board is denied, and the Board's cross-petition for enforcement is granted in all respects.

Mitchell, District Judge, dissented, and dissented also from denial of rehearing.