**NATIONAL LABOR RELATIONS
BOARD, Petitioner,**

v.

**LOCAL UNION NO. 180, UNITED
BROTHERHOOD OF CARPENTERS
AND JOINERS OF AMERICA, AFL–
CIO, Respondent.**

No. 71–1398.

United States Court of Appeals,
Ninth Circuit.

June 22, 1972.

Ira Goldberg (argued), Elliot Moore,
Atty., Dominick L. Manoli, Associate
Gen. Counsel, Marcel Mallet-Prevost,

Asst. Gen. Counsel, Washington, D. C., Roy O. Hoffman, Director, NLRB Region 20, San Francisco, Cal., for petitioner.

Victor J. Van Bourg (argued), San Francisco, Cal., William Leshe, Vallejo, Cal., Wayne L. Menebroker, Sacramento, Cal., for respondent.

Before KILKENNY and TRASK, Circuit Judges, and GOODWIN,* District Judge.

TRASK, Circuit Judge:

The National Labor Relations Board has petitioned this court, pursuant to Section 10(e) of the National Labor Relations Act, as amended, 29 U.S.C. § 151 et seq., for enforcement of its Order issued February 11, 1970, and its Supplemental Order, issued August 12, 1970. The Board's Decision and Order, as modified by the Supplemental Order, is reported at 181 N.L.R.B. No. 18.

B & K Drywall Systems, Inc. (B & K) is a California corporation engaged in the installation of sheetrock under subcontracts from building and construction contractors and other subcontractors. It was formed on September 28, 1967, by Lyle Kiltau, who owns all of the stock. Prior to the incorporation of B & K, Kiltau had been a partner with David Bush, doing business as B & K Drywall Systems (the partnership). The partnership had been engaged in the same type of work as the corporation, B & K, which succeeded it. Bush was the owner and president of Bush Painting & Drywall, Inc. (Bush Painting), a California corporation engaged as a painting and drywall subcontractor. From 1964 until the formation of the partnership, Kiltau had been an employee of Bush Painting, and its superintendent during the last year. Bush was never an officer, director, stockholder or employee of B & K. After its formation, about half of B & K's contracts were subcontracts from Bush Painting.

The Drywall Master Agreement was the collective bargaining agreement under which many area contractors operated. Among other things, it provided for employer contributions to a trust fund. B & K was not a signatory to this agreement, but the partnership had executed a memorandum with Local Union No. 180, United Brotherhood of Carpenters & Joiners of America, AFL–CIO (Union), incorporating its terms. After incorporation, B & K made trust-fund payments according to the Master Agreement, and neither the partnership nor B & K was informed of any delinquency in this respect. Bush Painting, however, was allegedly in arrears of several thousand dollars.

B & K, as charging party, accused the respondent Union of engaging in certain secondary boycotts in violation of Section 8(b)(4)(i) and (ii)(B) of the National Labor Relations Act, 29 U.S.C. § 158(b)(4)(i) and (ii)(B), and restraining and coercing employees in the exercise of rights guaranteed by Section 7 of the Act, 29 U.S.C. § 157, to engage in or refrain from bargaining or concerted activities, in violation of Section 8(b)(1)(A) and (b)(2) of the Act, 29 U.S.C. § 158(b)(1)(A) and (b)(2). The Board affirmed the Trial Examiner's findings against the Union. We affirm.

This case concerns four construction projects. Each involves a different general contractor, but the same representatives of the Union and the same charging party.

### 1. The Walters Project

 Walters, the general contractor, was asked by Leshe, the Union's business agent, whom he intended to have install the sheetrock. When Walters replied that he had not received

* Honorable Alfred T. Goodwin, United States District Judge, sitting by designation at date of argument from the District of Oregon, now a Circuit Judge.

bids yet, Leshe told him, "Do not use B & K"; he also told Walters he would get "kind of rough" if Walters used B & K. Walters testified that B & K submitted a bid and he would have used it had it not been for the conversations with Leshe.

It is a violation of Section 8(b)(4) (ii)(B) of the Act to threaten, coerce or restrain where an object is to force any person to cease doing business with any other. Local 761, International Union of Electrical etc. Workers v. National Labor Relations Board, 366 U.S. 667, 81 S.Ct. 1285, 6 L.Ed.2d 592 (1961). This is proscribed secondary boycott activity. Unqualified threats of the kind Leshe made to Walters are violations of the pertinent portions of Section 8(b). NLRB v. Local 825, Operating Engineers, 400 U.S. 297, 91 S.Ct. 402, 27 L.Ed.2d 398 (1971); NLRB v. Denver Bldg. & Constr. Trades Council, 341 U.S. 675, 71 S.Ct. 943, 95 L.Ed. 1284 (1951). Nor can this be considered "primary activity," and thus sheltered against the charge of violation of Section 8(b). We find the record supports the Board's findings.

### 2. The Recknagel Project

Recknagel contracted to build a high-school classroom and locker room. He executed a subcontract with Bush Painting for sheetrock installation, and Bush Painting subcontracted with B & K to furnish and hang the gypsum and soundboard. B & K registered its job with the Union, pursuant to the Drywall Master Agreement, and requested the Union to dispatch four employees to perform the work. When none were sent after two days, Kiltau sent two men, Griffith and Woods, to the Union office to obtain dispatch slips, in accordance with the Agreement. There, Union Representative McGrogan, in the absence of Leshe, issued workslips and told the men that the Union had not assigned men to the job because no one wanted to work

for Kiltau. He also assured them that if they transferred their memberships from a sister union to Local 180 they could get plenty of work.

After Griffith and Woods had worked a few days on this job, Leshe appeared and took their workslips from them. During the course of a subsequent argument at the jobsite, Leshe told Recknagel that he would have to get the B & K employees off the job or it would be closed down. Recknagel and his superintendent sent Kiltau, Griffith and Woods home. The same type of interference was repeated throughout the Recknagel Project.

### 3. The Reide Project

### 4. The Rubendall Project

The final two jobs have the same cast of characters as the Walters and Recknagel Projects; the plot is virtually the same and the drama continues consistently. They are substantially identical insofar as is required for the disposition of the legal issues. Repeating the details would add only length to this opinion.

Here again, as in the Walters project, the threats by Leshe to Recknagel, Reide and Rubendall, that their jobs would be shut down if B & K did not leave, violated the secondary boycott provisions of the Act and the Examiner and the Board were correct in so deciding. NLRB v. Denver Bldg. & Constr. Trades Council, *supra.*

Section 8(b)(1)(A) of the Act makes it an unfair labor practice for an employer or a union "to restrain or coerce . . . employees in the exercise of the rights guaranteed in section 7 . . . ," including the right "to refrain from any or all [concerted] activities . . . ." Union Representative McGrogan's attempt to influence Griffith and Woods to join respondent union

if they wanted to get plenty of work was a violation of Section 8(b)(1)(A). The hiring hall provision of the Master Agreement provided that "the selection of workmen for referral to jobs shall be on a nondiscriminatory basis as to Union membership or lack of membership or union good standing." McGrogan's efforts with Griffith and Woods support a finding of restraining and coercing them within the meaning of the Act. Local 357, International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers v. NLRB, 365 U.S. 667, 674–75, 81 S.Ct. 835, 6 L.Ed.2d 11 (1961); Radio Officers' Union v. NLRB, 347 U.S. 17, 40–41, 74 S.Ct. 323, 98 L.Ed. 455 (1954); NLRB v. International Hod Carriers, etc., Local No. 41, 295 F.2d 657, 658 (7th Cir. 1961).

■ To be sure, there was other testimony, and respondent would have us draw different inferences, conclusions and meanings from the undisputed testimony. It is the function of the Trial Examiner, who observes the witnesses and hears their testimony, to determine credibility. Santa Fe Drilling Co. v. NLRB, 416 F.2d 725, 729–30 (9th Cir. 1969); Shattuck Denn Mining Corp. v. NLRB, 362 F.2d 466, 469 (9th Cir. 1966).

■ The test which this court must apply is whether there is substantial evidence on the record as a whole which will support the Board's decision. Universal Camera Corp. v. NLRB, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951); NLRB v. Wisconsin Aluminum Foundry Co., 440 F.2d 393, 398 (7th Cir. 1971); Tonkin Corp. v. NLRB, 420 F.2d 495 (9th Cir. 1969). Applying this test, we believe there is such substantial evidence, and the Board's Decision and Order should be as modified by its Supplemental Order, enforced. The Board shall present an Order in conformity herewith.