## Cliff House Building Corporation, Inc. et al. *v.* Plumbers Union Local 690 et al., Appellants.

Argued September 9, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Robert G. Kelly, Jr.,* with him *Kelly, Moran, Gallagher & Kelley,* for appellants.

*John W. Nilon, Jr.,* with him *Carmen P. Belefonte,* and *Kassab, Cherry and Archbold,* for appellees.

OPINION BY WATKINS, P. J., March 31, 1975:

This appeal is from the order of the Court of Common Pleas of Delaware County overruling Preliminary Objections of appellant to appellee's complaint.

This action is in common law trespass by appellee against appellants for losses allegedly sustained in the construction of a high rise apartment building in Chester, Penna.

The pertinent paragraphs of the complaint are:

"10. From or about July 1969 to present, by reason of Plaintiff's continued refusal to employ Local 690 plumbers and pipe tradesmen at said construction site as aforementioned, Local 690 and its members, together with Defendants, John J. Convery and James J. O'Neill, at all times acting within the scope of their agency and employment with Local 690, authorized and did picket plaintiff's high-rise construction site as aforementioned.

"11. In support of the picketing activity as aforementioned, Local 690 and its members, together with Defendants, John J. Convery and James J. O'Neill, at all times acting within the scope of their agency

and employment with Local 690, unlawfully agreed and conspired to interfere with Plaintiff's existing contractual commitment with its suppliers, which interference Defendants knew would result in substantial delay in the completion of said apartment construction.

"20. From or about April, 1972 to present, by reason of Plaintiff's continued refusal to employ Local 690 plumbers and pipe tradesmen at said construction site as aforementioned, Local 690 and its members, together with Defendants, John J. Convery and James J. O'Neill, at all times acting within the scope of their agency and employment with Local 690, authorized and did picket Plaintiff's apartment construction site as aforementioned.

"21. In support of the picketing activity as aforementioned, Local 690 and its members, together with Defendants, John J. Convery and James J. O'Neill, at all times acting within the scope of their agency and employment with Local 690, unlawfully agreed and conspired to interfere with Plaintiff's existing contractual commitments with its suppliers, which interference Defendants knew would result in substantial delay in the completion of said apartment construction.

"23. As a result of said activities of Defendants as aforementioned, Plaintiff was required to substantially reduce construction at said site."

The appellants alleged by way of preliminary objection that the court below was without jurisdiction to hear the matter because the National Labor Relations Act as amended, §798; Act 20 U.S.C. §§157 and 158, preempted the jurisdiction and placed it solely in the National Labor Relations Board.

The appellee also filed an unfair labor practice charge with the National Labor Relations Board because of the picketing.

With this we cannot agree under the circumstances of this case. The United States Supreme Court has recognized that the National Labor Relations Act, supra, does not pre-empt the State courts' jurisdiction where there was a threat of violence and imminent threats to the public order. *United Construction Workers v. Laburnum Construction Corp.*, 347 U.S. 656 (1954) ; *San Diego Building Trades Council v. Garmon*, 359 U.S. 236 (1959).

In the case of *United Construction Workers v. Laburnum Construction Corp.*, supra, the Court said at pages 663-64:

"Congress has neither provided nor suggested any substitute for the traditional state court procedure for collecting damages for injuries caused by tortious conduct. For us to cut off the injured respondent from this right of recovery will deprive it of its property without recourse or compensation. To do so will, in effect, grant petitioners immunity from liability for their tortious conduct. We see no substantial reason for reaching such a result."

It may ultimately be determined that the proofs may not sustain the allegations pleaded, in which event the court below will be compelled to determine this case does not fall into the exceptions set forth above. However, on the record as it now appears, the lower court is not ousted from jurisdiction to entertain the claim of appellee as to the well pleaded allegations of the complaint.

The order of the court below is affirmed.

---

Concurring Opinion by Hoffman, J.:

Although I agree with the Majority that the Court of Common Pleas of Delaware County has jurisdiction to entertain the instant suit, I cannot subscribe to the rationale set forth in the Majority opinion. As a general rule, conduct which is arguably protected or prohibited by the National Labor Relations Act is subject to regulation *only* by the National Labor Relations Board. The

federal act has pre-empted the field and thus prohibits the state courts from assuming jurisdiction. The United States Supreme Court, however, has created an exception to the pre-emption doctrine in cases where the alleged union conduct was violent or constituted a threat to public order in some manner. *United Construction Workers v. Laburnum Const. Corp.*, 347 U.S. 656 (1954). I believe that the Majority has erroneously invoked the *Laburnum* exception permitting state regulation because the complaint in the instant case does not allege that the union's conduct was violent, disrupted the free flow of traffic, or in any way threatened the public order. However, the lower court does have jurisdiction over those portions of appellees' complaint which allege conduct amounting to a violation of §8(b)(4) of the Act. That provision prohibits labor organizations from engaging in certain forms of secondary conduct. Section 303 of the Act creates a federal cause of action for violations of §8(b)(4) which can be sued upon in state court.

Appellees filed a complaint in trespass seeking damages as a result of *two* distinct courses of conduct on the part of the appellant-union. First, the complaint alleges that the union picketed appellees' construction site in an effort to compel appellees to employ members of the union in the construction of an apartment building. Second, appellees allege that the union interfered with appellees' contractual relations with their suppliers by requesting, intimidating, and coercing appellees' suppliers "to cease shipment of essential construction supplies and materials to said construction site." Appellees seek compensatory damages for the alleged loss of rental income resulting from the delay in completing construction of the apartment building. Additionally, appellees allege that appellants' activities were intentional and malicious; therefore, they seek punitive damages. There is no request for injunctive relief.

Initially, it should be obvious that the lower court is

precluded from assuming jurisdiction of those portions of appellees' complaint which seek damages as a result of the union picketing. In their answer to appellants' preliminary objections, appellees admitted that an unfair labor practice charge had been filed with the National Labor Relations Board in regard to the picketing, and had been settled at the mutual agreement of both parties.[1] Clearly, the picketing was conduct prohibited by the Act, and thus state court jurisdiction is pre-empted. *Motor Coach Employees v. Lockridge*, 403 U.S. 274 (1971) ; *San Diego Building Trades Council v. Garmon*, 359 U.S. 236 (1959). The Majority, however, apparently believes that the allegations contained in appellees' complaint are sufficient to bring this case within an exception to the pre-emption doctrine: ". . . due regard for the presuppositions of our embracing federal system, including the principle of diffusion of power not as a matter of doctrinaire localism but as a promoter of democracy, has required us not to find withdrawal from the States of power to regulate where the activity regulated was a merely peripheral concern of the Labor Management Relations Act. . . . Or where the regulated conduct touched interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, we could not infer that Congress had deprived the States of the power to act." *Garmon*, supra, 359 U.S.

---

1. Apparently, the union's picketing was violative of §8(b)(7) of the Act, which makes it an unfair labor practice for a union "to picket or cause to be picketed, or threaten to picket or cause to be picketed, any employer where an object thereof is forcing or requiring an employer to recognize or bargain with a labor organization as the representative of his employees . . . unless such labor organization is currently certified as the representative of such employees: . . .

"(C) where such picketing has been conducted without a petition under section 9(c) being filed within a reasonable period of time not to exceed thirty days from the commencement of such picketing . . ."

at 243-244. Unlawful recognitional picketing is obviously of more than peripheral concern to the Act. The issue is whether the complaint filed in this case alleges interests "deeply rooted in local feeling."

The genesis of the "deeply rooted" exception to the rule that the National Labor Relations Board has primary jurisdiction over conduct arguably within §7 or §8 of the Act is found in *Allen-Bradley Local v. Wisconsin Employment Relations Board,* 315 U.S. 740, 749 (1942), where the Court held that a state may exercise "its historic powers over such traditionally local matters as public safety and order and the use of streets and highways."[2] In *Garner v. Teamsters Union,* 346 U.S. 485, 488 (1953), the Court distinguished *Allen-Bradley*: "Nor is this a case of mass picketing, threatening of employees, obstructing streets and highways, or picketing homes." The exception was reaffirmed in *Laburnum,* supra, and *Intl. Union, United Automobile, Aircraft and Agricultural Implement Workers v. Russell,* 356 U.S. 635 (1958). The allegations contained in the complaints filed in those two cases are clearly distinguishable from the present case. In *Laburnum,* the complaint alleged that ". . . agents of the respective petitioners . . . demanded that respondent's employees join the United Construction Workers . . . Upon respondent's refusal and that of many of its employees to yield to such demands, petitioners' agents threatened and intimidated respondent's officers and employees *with violence to such a degree* that respondent was compelled to abandon all its projects in that area." 347 U.S. at 658 (Emphasis added). Similarly, the complaint in *Russell* alleged that "[s]uch pickets . . . by force of numbers, *threats of bodily harm to Russell* and of dam-

---

2. In *Linn v. Plant Guard Workers,* 383 U.S. 53 (1966), the Court held that malicious libel is subject to state regulation, even when occurring in the context of a labor dispute, because protection from malicious libel is a compelling state interest and because such conduct is merely a peripheral concern of the Act.

age to his property, prevented him from reaching the plant gates. At least one striker took hold of Russell's automobile." 356 U.S. at 636 (Emphasis added).

*Garmon* makes clear that *Russell* and *Laburnum* are to be confined to their facts: "Throughout, the opinion of the Court [in Laburnum] makes it clear that the holding in favor of state jurisdiction was limited to a situation involving violence and threats of violence . . . there is nothing in the measure of damages to indicate that state power was exerted to compensate for anything more than the direct consequences of the violent conduct. Russell . . . also continually stresses the violent nature of the conduct and limits its decision to the 'kind of tortious conduct' there involved." 359 U.S. at 248, n.6. In *Stryjewski v. Local Union No. 830*, 451 Pa. 550, 304 A.2d 463 (1973), our Supreme Court remanded to the lower court because there were no facts of record in support of the Chancellor's assertion that plaintiff's damages were caused by *violent or mass* union activity. Moreover, the Court noted that damages are properly awarded *only* for unlawful and violent activities. 451 Pa. at 554, 304 A. 2d at 466.

The relevant portions of the complaint filed in the instant case are as follows: (1) Paragraph 9. "From or about July, 1969 to present, [defendants] unlawfully agreed and conspired to intimidate, threaten, coerce and compel Plaintiff to employ Local 690 [members] at said construction site." (2) Paragraph 10. "[Defendants] authorized and did picket Plaintiff's high-rise construction site . . ." (3) Paragraph 11. "In support of the picketing activity . . . [Defendants] unlawfully agreed and conspired to interfere with Plaintiff's existing contractual commitment with its suppliers . . ." (4) Paragraph 12. "Said unlawful actions of Defendants . . . consisted of requests, intimidation and coercion made upon Plaintiff's suppliers to cease shipment of essential construction supplies and materials to said construction site." There are

no allegations of actual violence, threatened violence, property damage, interference with the free flow of traffic, or imminent threat to the public order. I fail to see how the complaint alleges union conduct "deeply rooted in local feeling." Certainly, it is possible to request, intimidate or coerce without engaging in violence or mass picketing. The complaint merely alleges that appellants intimidated and coerced appellees' suppliers to cease shipment of construction materials. It does not provide any detail as to the content of the alleged intimidation and coercion. The Majority apparently assumes that the suppliers were threatened with violence. There is nothing in the complaint to support such an assumption. While it is certainly possible that the alleged threats and intimidation violated the National Labor Relations Act, such a violation cannot be equated with violence or a threat to the public order.

Thus, because appellants' recognitional picketing was conduct clearly prohibited by the Act, and because appellees' complaint does not allege any violent activities on the part of the union, the lower court has no jurisdiction to award damages based on the picketing. The court's jurisdiction over the alleged interference with appellees' supply contracts, however, can be justified, not as a *Laburnum-Russell* exception to the general pre-emption rule, but by reference to §8(b)(4) of the Act, which prohibits certain kinds of secondary activity, and §303, which allows a person injured by a violation of §8(b)(4) to sue for damages in state or federal court.

Under §8(b) of the Act, it is "an unfair labor practice for a labor organization or its agents—

"(4) (i) to engage in or to induce or encourage any individual employed by any person engaged in commerce or in an industry affecting commerce to engage in a strike or a refusal in the course of his employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities

or to perform any service; *or* (ii) *to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce,* where in either case an object thereof is: . . .

"(B) forcing or requiring any person to . . . cease doing business with any other person . . ." Provided, That nothing contained in this clause (B) shall be construed to make unlawful, where not otherwise unlawful, any primary strike or primary picketing; . . . " (Emphasis added)..

§303 of the Labor Management Relations Act provides:

"(a) It shall be unlawful, for the purpose of this section only, in an industry or activity affecting commerce, for any labor organization to engage in any activity or conduct defined as an unfair labor practice in section 8(b)(4) of the National Labor Relations Act, as amended.

"(b) Whoever shall be injured in his business or property by reason of any violation of subsection (a) may sue therefor in any district court of the United States . . . *or in any other court having jurisdiction of the parties,* and shall recover the damages by him sustained and the cost of the suit." (Emphasis added).

Section 8(b)(4) is commonly referred to as the "secondary boycott" provision of the Act. Congress sought to prevent labor organizations from exerting pressure on neutral employers, in an attempt to win recognition or gain concessions from an employer with whom the union has a labor dispute. Thus, if a union has a dispute with an employer (the "primary" employer), it may seek to gain an advantage by pressuring an employer with whom it has no dispute, but who conducts business with the primary employer (the "secondary" employer). The union may do so by encouraging an employee or employees of the secondary employer, *inter alia,* to withhold services necessary for the secondary employer to conduct business with the primary employer, or the union may threaten, coerce, or restrain the secondary employer di-

rectly. In either instance, the union's conduct violates §8(b)(4) if its object is to force the secondary employer to refrain from dealing with the primary employer. Congress did not want unions to exert pressure on neutral employers with whom they have no labor dispute, although it is equally clear that Congress did not seek to outlaw primary activity merely because secondary implications might be present.[3]

The complaint filed in the present case does not specifically plead that appellants violated §8(b)(4). Yet it is clear that the conduct alleged in appellees' complaint is squarely within the proscription of §8(b)(4)(ii)(B): appellants allegedly intimidated and coerced appellees' suppliers into withholding shipment of essential construction materials to appellees' job site.[4] See *N.L.R.B. v. United Bro. of Carpenters & Joiners*, 462 F. 2d 1321 (9th Cir. 1972) ; *N.L.R.B. v. Lafayette Bldg. & Constr. Trades Council*, 445 F. 2d 495 (5th Cir. 1971) ; *N.L.R.B. v. United Assoc. of Journeymen*, 320 F. 2d 250 (5th Cir. 1963) ; *Pollio & Son, Inc. v. Teamsters Union*, 242 F. Supp. 684 (E.D.N.Y. 1965) ; *Table Talk Pies of Westchester v. Strauss*, 237 F. Supp. 514 (S.D.N.Y. 1964).

---

3. The proviso to §8(b)(4)(B) makes clear that lawful primary activity remains lawful despite secondary effects. See *Electrical Workers v. Labor Board*, 366 U.S. 667 (1961). For example, a lawful picket line at the situs of the employer with whom a union has a dispute, remains lawful even though deliverymen employed by secondary employers may refuse to cross the picket line.

4. It is not necessary for the union to seek a complete and total termination of the business relationship between the primary and secondary employers in order for it to violate §8(b)(4)(ii)(B): "The Court of Appeals concluded that the union's objective was to force Burns 'to use its influence with the subcontractor to change the subcontractor's conduct, not to terminate their relationship' and that this was not enough. . . . That court read the statute as requiring that the union demand nothing short of a complete termination of the business relationship between the neutral and the primary employer. Such a reading is too narrow." *N.L.R.B. v. International Union of Operating Engineers*, 400 U.S. 297, 304 (1971).

The fact that appellees base their claim on an alleged violation of state law is irrelevant. Obviously, there is an overlap between an alleged civil conspiracy to interfere with contractual commitments and §8(b)(4)(ii)(B). Section 303 affords a cause of action based on a violation of federal law. Therefore, no court, state or federal has jurisdiction to award damages for a peaceful common law tort. This precise issue has arisen in cases where the complaint, as in this case, alleged only a state action, and the defendant sought to remove to federal court: "... significant operative facts of the claim of state law tort inevitably coincide with the economic determinants of a Section 8(b)(4)(i)(ii)(B) unfair labor practice. The necessary consequence is that the unfair labor practice claim, whether or not it stands clear of all state law overtones and entanglements, is the dominant and determines removability ..." *Pollio & Son,* supra, 242 F. Supp. at 686.[5] In *Teamsters Union v. Morton,* 377 U.S. 252 (1964), moreover, the Supreme Court made clear that if the union conduct is peaceful, an action for damages under §303 for an alleged violation of §8(b)(4) completely displaces state law, and the state court is precluded from awarding damages for a violation of the state law.

Normally, the existence of an unfair labor practice

---

5. See also *Prospect Dairy, Inc. v. Dellwood Dairy Co.,* 287 F. Supp. 176 (N.D.N.Y. 1964). *Beacon Moving & Storage, Inc. v. Local 814, Intl. Bro. of Teamsters,* 362 F. Supp. 442 (S.D.N.Y. 1972) and *Kerr v. Butler Bldg. Trades Council,* 447 Pa. 247, 288 A. 2d 525 (1972), are distinguishable. In *Beacon,* the Federal court denied defendant's motion for removal from state court. However, the complaint sought only an *injunction* for violation of state law. §303 provides only a damage remedy. Therefore, the complaint did not raise a federal question. In *Kerr,* the Pennsylvania Supreme Court held that plaintiff's complaint was pre-empted because it alleged a clear violation of §8(b)(4)(ii)(B). Again, the complaint sought only an injunction. Thus, our Supreme Court correctly determined that the appellate court lacked jurisdiction under §303 because the federal provision provides only a damage remedy.

claim will oust the state court of jurisdiction. *Motor Coach Employees v. Lockridge*, supra. Where the alleged unfair labor practice is a violation of §8 (b) (4), however, no pre-emption issue is involved. Congress has given the person injured by a secondary boycott the option of pursuing an administrative remedy by filing an unfair labor practice charge, or seeking a legal remedy by suing for damages under §303. Thus, no pre-emption issue is involved. See *Franchi Const. Co. v. Intl. Hod Carriers Union*, 248 F. Supp. 131 (D. Mass. 1965). In *Intl. Longshoremen's & Warehousemen's Union v. Juneau Spruce Corp.*, 342 U.S. 237 (1952), the Court held that actions under §303 were not dependent on prior administrative determinations. The state court must itself decide whether the alleged conduct amounts to a violation of §8 (b) (4). See also *Plumbers & Fitters, Local 761 v. Matt J. Zaich Const. Co.*, 418 F. 2d 1054 (9th Cir. 1969).

Thus, I believe that the lower court has jurisdiction because appellees effectively allege a violation of the secondary boycott provisions of the National Labor Relations Act. It must be reiterated that the unfair labor practice claim renders Pennsylvania tort law completely inapplicable. Because no violence has been alleged, appellees may recover damages only to the extent that they prove that appellants have engaged in conduct prohibited by federal law, i.e., §8 (b) (4) (ii) (B) by virtue of §303. The state court lacks jurisdiction to grant relief for activities not prohibited by these sections.[6]

JACOBS and SPAETH, JJ., join in this concurring opinion.

---

6. Because Pennsylvania tort law has been displaced, punitive damages cannot be awarded: "Punitive damages for violations of §303 conflict with the congressional judgment, reflected both in the language of the federal statute and in its legislative history, that recovery for an employer's business losses caused by a union's peaceful secondary activities proscribed by §303 should be limited to actual, compensatory damages." *Teamsters Union v. Morton*, supra, 377 U.S. at 260.